740 N.W.2d 323 (2007)
Frank J. TOMECEK, Jr., and Janis H. Tomecek, Plaintiffs/Counter-Defendants-Appellees/Cross-Appellants
v.
Andrew Lucian BAVAS, Joyce Bavas, Inez Hildegard Bavas, Stanley Francis Stasch, Julie Stasch, Martha Stasch, Patricia M. Curtner, Timothy V. McGree, Peter A. Stratigos, Alice M. Stratigos, and Pamela Kruegar, Defendants/Counter-Plaintiffs-Appellants/Cross-Appellees, and
Devereaux Bowly, Jr., Michael L. Jones, Laura L. Avery, Julia E. Pietras, David N. Derbyshire, Ellen R. La Fountain, Jonathan Rodgers, Royal Kennedy Rodgers, Lee Stahl, III, and Susan Stahl, Defendants-Appellants/Cross-Appellees, and
Indiana Michigan Power Company, d/b/a American Electric Power Company, Inc., Michigan Department of Labor and Economic Growth, and Berrien County Drain Commissioner, Defendants-Appellees, and
Daniel Johnson, Scott Loess, Kathleen Loess, Jane Henkle, Richard Cragg, Lois Zyer, Arthur C. Mertz Revocable Trust, Peter Levy, Benita Levy, Lakeside Property Owners, Chikaming Township, Robert Forker, Jr., New Buffalo Savings Bank, Fifth Third Bank, Shoreline Bank, Semco Energy, Inc, Semco Energy Gas Company, and SBC Ameritech Corporation, Defendants.
Docket No. 258907.
Court of Appeals of Michigan.
Submitted August 8, 2006, at Grand Rapids.
Decided July 3, 2007, at 9:15 a.m.
Released for Publication October 26, 2007.
*326 Warner Norcross & Judd, LLP (by Devin S. Schindler and Ryan D. Cobb), Grand Rapids and Jerry G. Johnson, St. Joseph, for Frank J. Tomecek, Jr., and Janis H. Tomecek.
Dickinson Wright, PLLC (by Kevin J. O'Dowd and Keith J. Brodie), Grand Rapids and DeFrancesco Dienes, PC (by Scott A. Dienes), Stevensville, for Andrew L. Bavas and others.
Before: ZAHRA, P.J., and HOEKSTRA and OWENS, JJ.
OWENS, J.
Defendants/counterplaintiffs Andrew Bavas, Joyce Bavas, Inez Bavas, Stanley Stasch, Julie Stasch, Martha Stasch, Patricia Curtner, Timothy McGree, Peter Stratigos, Alice Stratigos, and Pamela Kruegar and defendants Devereaux Bowly, Jr., Michael Jones, Laura Avery, Julia Pietras, David Derbyshire, Ellen LaFountain, Jonathan Rodgers, Royal Rodgers, Lee Stahl, III, and Susan Stahl[1] appeal as of right, and plaintiffs Frank and Janis Tomecek cross-appeal as of right, the October 15, 2004, "Stipulated Corrected Judgment Partially Revising Plat of O.T. Henkle." We affirm.

I. Basic Facts and Procedural History
Plaintiffs and defendants are neighboring property owners in the O.T. Henkle Subdivision along Lake Michigan in Chikaming Township, Berrien County. The subdivision is bordered on the west by Lake Michigan and on the east by Lake Shore Road. Plaintiffs own Lot 2 in the subdivision and wish to build a home on this lot. However, by virtue of a 1974 restrictive agreement, they cannot do so "unless and until a municipal sanitary sewer line is made available to the premises." Lot 2 is landlocked, with ingress and egress afforded by way of a "drive easement" over Lots 1 and 3 from Lake Shore Road. Plaintiffs wish to use this "drive easement" to access sewer and other utilities. Defendants assert that this is an impermissible use of the drive easement.
The underlying facts are not in dispute. O.T. Henkle originally owned all the property in the plat. On his death, the property passed to C.W. and Virginia Henkle, Gladys Fairclough, and Jane H. Henkle (referred to by the parties as the "original grantors"). Before the property was platted in 1976, it was divided into six parcels, five of which were sold to the defendants or their predecessors in interest and one of which, Lot 2, was retained by the original grantors. In 1976, Lot 2 was conveyed to Jane Henkle and plaintiffs jointly.[2] Plaintiffs *327 owned Lot 2 jointly with Jane Henkle from 1976 until 1999, when plaintiffs became the sole owners of the lot by quit-claim deed.
When Lot 1 was conveyed in 1967, it was conveyed subject to an easement for beach access and subject to another easement, for the benefit of Lot 2, for the installation, maintenance and repair of utility lines, poles, pipes, and conduits over the northerly five feet of Lot 1. However, in 1972, the portion of Lot 2 at which the utility easement abutted the property was conveyed to the owners of Lot 1, thus separating Lot 2 from the utility easement over the northerly portion of Lot 1. As a result, after the 1972 conveyance, Lot 2 lacked all access to utilities from Lake Shore Road.
In 1975, the O.T. Henkle plat was filed with the township.[3] The plat depicts an approximately 10-foot drive easement for Lots 3, 4, and 5 along the southern edge of the plat (referred to by the trial court and the parties as the "south drive easement"), a water easement running from Lake Shore Road through Lots 3 and 4 to Lot 5, and a 20-foot-wide drive easement over Lots 1 and 3 for the benefit of Lots 2 and 4 (referred to by the trial court and the parties as the "central drive easement").[4]
In 1978, the original grantors purported to grant to the township an easement for sewer lines within the south drive easement. It is undisputed that the original grantors no longer owned any legal interest in the property through which the easement was purported to be granted, having conveyed fee-simple title in Lots 3, 4, and 5 to defendants or their predecessors in interest before 1978.
In 1984, the original grantors purported to convey to plaintiff Janis Tomecek fee-simple title to all areas identified on the plat as drive easements and parking easements. As with the purported 1978 grant of an easement for sewer lines, it is undisputed that this conveyance was ineffective because in 1984 the original grantors lacked any legal interest in the property containing the platted easements.
As the trial court noted, the dispute in this case is whether the central drive easement can also be used for the utility and sewer lines needed pursuant to the restrictive agreement for plaintiff to build on Lot 2. In their amended complaint, plaintiffs asked the trial court to (1) issue a declaratory judgment delineating the extent of the central drive easement as platted, (2) establish an easement by necessity for public utilities, coexistent with the central drive easement, and (3) correct or revise the plat to provide for a utilities easement for the benefit of Lot 2, consistent with the intent of the original grantors that all lots in the plat have access to utilities and that the lot owners be allowed to build on them.
The trial court granted plaintiffs' motion for summary disposition delineating the extent of the central drive easement as platted. The court explained that a declaration of the extent of plaintiffs' rights in the platted easement was necessary in order to guide plaintiffs' future conduct and preserve their legal rights. The trial court then concluded that the platted drive easement was unambiguous. It entitled plaintiffs to use the easement as "a [right of] way which grants a right of passage over land." However, the trial court refused to establish an easement by necessity for public utilities, thus granting defendants' *328 motion for summary disposition on that count.
Finally, the trial court considered whether plaintiffs were entitled to revision of the plat pursuant to MCL 560.221 and MCL 560.226(1). The trial court ultimately concluded that plaintiffs had met the burden necessary to warrant a revision of the plat to include a utility easement coexistent with the central drive easement for the benefit of Lot 2. The trial court observed that defendants "have already run utility lines under their own [south] drive easement," and, therefore, it found "very compelling" plaintiffs' argument that defendants could not reasonably challenge plaintiffs' request to amend or revise the plat to allow plaintiffs to run utilities under the central drive easement. Further, the trial court noted:
. . . Defendants have not submitted any admissible evidence which would support a reasonable objection to Plaintiff's [sic] request to revise the plat, nor have they offered any admissible evidence of any reasonable objection which would be of any value to the public. All of the objections asserted by Defendants relate [only] to private concerns and involve purely private interests.
The trial court granted plaintiffs' motion for summary disposition, ruling that plaintiffs "may revise the plat to include a utility easement over the central drive easement for the benefit of Lot 2."

II. Judicial Revision of Plat
Defendants argue that the trial court erred when, basing its authority on the Land Division Act, it ordered the revision of the plat to create a utility easement for Lot 2 in the land subject to the existing drive easement to the property. We disagree.
We review de novo a trial court's decision on a motion for summary disposition. Dressel v. Ameribank, 468 Mich. 557, 561, 664 N.W.2d 151 (2003). "The extent of a party's rights under an easement is a question of fact for the trial court, which we review for clear error." Little v. Kin, 249 Mich.App. 502, 507, 644 N.W.2d 375 (2002), aff'd 468 Mich. 699, 664 N.W.2d 749 (2003), citing Dobie v. Morrison, 227 Mich. App. 536, 541-542, 575 N.W.2d 817 (1998). "A finding is clearly erroneous where, although there is evidence to support the finding, the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been made." Ambs v. Kalamazoo Co. Rd. Comm., 255 Mich.App. 637, 652, 662 N.W.2d 424 (2003). The proper interpretation and application of a statute presents a question of law that we consider de novo. Eggleston v. Bio-Medical Applications of Detroit, Inc., 468 Mich. 29, 32, 658 N.W.2d 139 (2003).

A. Effect of Plat Revision on Substantive Rights of Property Holders
The title of the Land Division Act, MCL 560.101 et seq., notes that, among other things, the act is designed to (1) "regulate the division of land," (2) "provide for proper ingress and egress to lots and parcels," (3) "promote proper surveying and monumenting of land subdivided and conveyed by accurate legal descriptions," (4) "establish the procedure for vacating, correcting, and revising plats," and (5) "provide for the filing of amended plats[.]" Title of 1967 P.A. 288. MCL 560.125 sets forth the process for surveying and marking the subdivided property. This information is compiled on the plat, which is then recorded with the municipality. See MCL 560.131 through 560.198.
Defendants argue that MCL 560.221 through 560.229, which specify the statutory requirements for vacating, correcting, and revising plats, only govern *329 revisions to the plat map to reflect existing property rights and do not affect the substantive rights of the lot owners. Therefore, they maintain, the trial court did not grant plaintiffs a substantive property right to a utility easement for Lot 2 when it granted their motion for revision of the plat map, because this revision did not transfer substantive property rights to plaintiffs, nor did plaintiffs successfully move the trial court under another theory of recovery to acquire utility easement rights to Lot 2. We disagree. Instead, we conclude that the provisions found in MCL 560.221 through 560.229 for vacating, correcting, or revising a plat are designed not only to alter the plat map filed with the municipality, but also to alter the underlying property interests reflected in the map. Accordingly, the plat revision ordered by the trial court pursuant to MCL 560.221 through 560.229 gave plaintiffs, as the owners of Lot 2, a substantive right to a utility easement in the land subject to the drive easement to the property.
The provisions of the Land Division Act indicate that a plat filed with a municipality is an official description of the subdivided parcel represented by the plat and the lots therein. First, the requirements of MCL 560.135 through 560.141 ensure that the map of the subdivision filed with the final plat accurately reflects the division of the property in the parcel. MCL 560.135 states:
The map of the subdivision, as drawn on the final plat shall comply with [MCL 560.135 through 560.141]. It shall contain sufficient information to completely define, for the purpose of a resurvey, the location of any boundary, corner or angle point within the plat. All land lying within the boundaries of the plat shall be shown thereon in such a manner that title to the area may be clearly established as to whether dedicated to public use or reserved to private use.
MCL 560.136(a) requires that the plat describe the location of the exterior boundaries of the parcel "with reference to a corner or corners established in the government survey and indicated by distances and bearings. The Michigan coordinate system may also be used for referencing such government survey points." Further, the plat must include the lengths and bearings of these boundaries, MCL 560.136(b) and (c), the location of public utility easements, MCL 560.139, the location of streets, roads, alleys, parks, and other public or private commons, MCL 560.137, and the length, width, and bearing of each lot line included in the plat, MCL 560.140. These requirements ensure that the plat map accurately identifies both the parcel and the property divisions within the parcel.
More importantly, after a plat has been recorded, lots in the plat must be referenced by use of the plat caption and lot number and not, for example, by a metes-and-bounds description of the property. "When a subdivision plat has been recorded, the lots in that plat shall be described by the caption of the plat and the lot number for all purposes, including those of assessment, taxation, sale and conveyance." MCL 560.255 (emphasis added). "The word `shall' is unambiguous and is used to denote mandatory, rather than discretionary, action." STC, Inc. v. Dep't of Treasury, 257 Mich.App. 528, 537, 669 N.W.2d 594 (2003). MCL 560.255 requires that a lot in a platted parcel of land be identified in all transactions by referring to the plat, and not by a metes-and-bounds description. As indicated in MCL 560.135 through 560.141, the metes-and-bounds description of the lot and the property rights appurtenant to that lot are included in the recorded plat and describe *330 the rights associated with that lot. Because all transactions involving the platted lot (including sales and conveyances of the lot) shall be described by reference to the plat caption and lot number, the description found in the plat of the lot and of the property rights associated with the lot acts as the "official" description of the lot. Accordingly, changes to the metes-and-bounds description of the lot or to the rights associated with the lot must be made by changing the plat.
In turn, this means that the process of changing the plat pursuant to the requirements of the Land Division Act also changes the substantive property rights associated with lots in that plat. Accordingly, the provisions of the Land Division Act concerning the vacation, correction, or revision of plats, MCL 560.221 through 560.229, effectuate substantive changes to property rights in the subdivided parcel and reflect these substantive changes through a corresponding change to the plat map. Therefore, when the trial court revised the plat to grant plaintiffs a utility easement appurtenant to Lot 2, it did not merely alter the plat map, but awarded plaintiffs an underlying substantive right to the utility easement.

B. Trial Court's Authority to Revise the Drive Easement to Include a Utility Easement
On appeal, defendants do not challenge the trial court's determination that the drive easement set forth in the plat is unambiguous and includes only a right of passage over the land. Rather, defendants argue that, given the trial court's conclusion that the platted drive easement encompasses only a right of passage to Lot 2 and does not extend to allow the placement of utilities in the easement, the trial court clearly erred in subsequently finding that plaintiffs were entitled to revise the plat pursuant to MCL 560.221 and MCL 560.226 to provide for a utility easement in the drive easement. Defendants maintain that because plaintiffs had no independent right to a utility easement under any substantive property-law theory, the trial court exceeded its authority in revising the plat to depict such an easement.
"[W]here the language of a legal instrument is plain and unambiguous, it is to be enforced as written and no further inquiry is permitted." Little v. Kin, 468 Mich. 699, 700, 664 N.W.2d 749 (2003). Thus, the trial court's determination that the term "drive easement," as used in the plat, is unambiguous prevented further inquiry into whether the drive easement was intended by the proprietors of the plat to also provide Lot 2 with access to utilities. In other words, having determined that the term "drive easement" as used in the plat was unambiguous, well-settled principles of common law prevented the trial court from considering extrinsic evidence to interpret that term to include utilities or anything other than passage. Thus, in the absence of the Land Division Act, the trial court's finding regarding the meaning of "drive easement" would necessarily end the trial court's analysis and preclude any grant of relief to plaintiffs.
The Land Division Act, however, unequivocally grants the trial court the authority to "vacate, correct, or revise all or a part of a recorded plat" if an owner in the platted subdivision files a proper complaint seeking such relief. MCL 560.221 and 560.222. Defendants do not assert that plaintiffs failed to file a proper complaint, and there does not appear to be any basis for them to do so. Thus, the trial court was within the statutory authority granted to it by the Land Division Act when it further considered plaintiffs' request to revise the plat, regardless of its earlier determination that the term "drive easement" was unambiguous as a matter *331 of common law. Accordingly, the question before us becomes whether the Land Division Act authorizes the trial court's ultimate decision allowing revision of the plat to provide for a utility easement for the benefit of Lot 2.
The Land Division Act provides that, "[u]pon trial and hearing of the action, the court may order a recorded plat or any part of it to be vacated, corrected, or revised," subject to certain exceptions not applicable to the instant case.[5] MCL 560.226(1). The Land Division Act neither delineates the circumstances under which a trial court may determine that revision to a plat is appropriate nor places or defines the burden of proof to be met in order to warrant revision.
The primary goal of statutory interpretation is to ascertain and give effect to the Legislature's intent as expressed by the language of the statute. Neal v. Wilkes, 470 Mich. 661, 665, 685 N.W.2d 648 (2004). When determining intent, a court must look first at the language of the statute. Yaldo v. North Pointe Ins. Co., 457 Mich. 341, 346, 578 N.W.2d 274 (1998). "If the language is clear and unambiguous, judicial construction is not normally permitted." Id. If reasonable minds can differ regarding the meaning of the language used, however, judicial construction is appropriate. Id. "[U]nless defined in the statute, every word or phrase of a statute should be accorded its plain and ordinary meaning, considering the context in which the words are used." Lewis v. LeGrow, 258 Mich.App. 175, 183, 670 N.W.2d 675 (2003). "If the language used is clear and the meaning of the words chosen is unambiguous, a common-sense reading of the provision will suffice, and no interpretation is necessary." In re Certified Questions (Karl v. Bryant Air Conditioning Co.), 416 Mich. 558, 567, 331 N.W.2d 456 (1982). The court may consult a dictionary to determine the ordinary meaning of undefined words in the statute. Lewis, supra at 183, 670 N.W.2d 675. Moreover, when interpreting statutes, every word, phrase and clause must be given effect, and an interpretation that would render any part of a statute surplusage or nugatory should be avoided. Grimes v. Dep't of Transportation, 475 Mich. 72, 89, 715 N.W.2d 275 (2006).
Again, the plain language of the Land Division Act allows a court to "order a recorded plat or any part of it to be vacated, corrected, or revised. . . ." MCL 560.226(1). Random House Webster's College Dictionary (2000) defines "vacate" as "to give up or relinquish" or "to render inoperative; annul," while Black's Law Dictionary (8th ed.) defines "vacate" as "[t]o nullify or cancel; make void; invalidate[.]" "Correct" is defined as "to set or make right; remove the errors or faults from." Random House Webster's College Dictionary (2000). "Revise" is defined as "to amend or alter" or "to alter (something written or printed), in order to correct, improve or update" by Random House Webster's College Dictionary (2000) and as "[t]o go over a thing for the purpose of amending, correcting, rearranging, or otherwise improving it" by Black's Law Dictionary (6th ed). Defendants' interpretation *332 of the trial court's authority under the act, specifically that it could only correct the plat to depict preexisting substantive property rights, would be persuasive only if the act afforded the court the authority to vacate or correct a plat. Defendants' interpretation ignores the term "revise" in the statute and renders the use of that term surplusage or nugatory. This is impermissible. See Grimes, supra at 89, 715 N.W.2d 275. By affording a trial court the authority to "revise" a plat, the plain language of the Land Division Act permits a trial court to act beyond merely correcting errors. Instead, MCL 560.226(1) allows a trial court to order the alteration of a plat to effect the relinquishment of an interest, to remove errors or faults from the plat, or to amend, improve, or update it. Therefore, defendants' assertion that the trial court was precluded from considering plaintiffs' petition for revision of the plat and their limited construction of the trial court's authority under the Land Division Act lack merit.

C. Reasonableness Requirement
Defendants argue that the trial court erred when it required them to articulate a reasonable objection that was of substance and of value to the public in opposition to plaintiffs' request to revise the plat. Defendants also argue that the trial court erred when it concluded that defendants' objection to plaintiffs' request to revise the plat to provide for a utility easement in the central drive easement was not reasonable. We disagree.
As noted earlier, the Land Division Act does not place or define the burden of proof that must be met to warrant revision under the act. It simply provides that, after hearing the parties, the circuit court may vacate, correct, or revise all or part of a recorded plat. MCL 560.221. In In re Gondek, 69 Mich.App. 73, 244 N.W.2d 361 (1976), this Court addressed the burden of proof under the version of the Land Division Act then in effect.[6] The Court explained as follows:
We confront yet another case which requires that this Court supply key missing pieces to a legislative puzzle called the Subdivision Control Act of 1967, [MCL 560.101 et seq.]. We have previously encountered confusion in this act, and must conclude, again, that "these provisions emerged prematurely from the legislative drafting process". Feldman v. Monroe Township Board, 51 Mich.App. 752, 755, 216 N.W.2d 628 (1974).
The precise question we must face is the placement and the severity of the burden of proof in a proceeding brought to vacate all or part of a recorded plat. . . .
A review of the law of vacating recorded plats is in order. Before the 1967 enactment of the Subdivision Control Act, the statutory scheme found in the Plat Act of 1929, 1929 P.A. 172, governed the making, approving, filing, recording, altering, and vacating of plats. Under the 1929 act, those objecting to the petition to vacate bore the burden of raising a reasonable objection to the petition.
"[T]he court shall proceed to alter or vacate, correct or revise, the plat or part thereof, unless there is reasonable objection to making the alteration or vacation, correction or revision, in which case the court shall not proceed to alter or vacate, correct or revise the plat, or *333 part thereof unless it is deemed necessary for the health, welfare, comfort or safety of the public." Former [MCL 560.62]. (Emphasis added.)
* * *
When the 1967 legislation was enacted, repealing the 1929 law, the draftsmen neglected to include an indication of who was to bear the burden of proof and what the precise burden was to be. Provisions in the new law that concern petitions to vacate elaborate requirements of pleading, notice, and standing, see [MCL 560.221 through 560.226], but give no clue to the burden of proof. Section 226 surprisingly concludes:
"After requiring proof that the required notices have been given and after hearing all interested parties, the court may order dimensional changes to be made in a recorded plat, or may order a recorded plat or any part of it to be vacated, corrected or revised * * *."[[7]]
There is no indication of why a judge should order that a plat be vacated, nor any suggestion of which party must convince the court. It is as if the Legislature set a table for a banquet but forgot to serve the meal. [Id. at 73-75, 244 N.W.2d 361.]
The Gondek Court then determined that
[t]he least confusing and, we believe, most proper solution is to declare that the prior law on burden of proof in proceedings to vacate a plat remains intact despite the 1967 act. We believe that it is more appropriate to perpetuate prior law that has not been expressly rejected by the Legislature than it is to fashion a new doctrine out of thin air. If there was a legislative intent to replace the "reasonable objection" test, we cannot find it. If we are in error in continuing the prior test-a doctrine, incidentally that stood for nearly 40 years-let the Legislature correct us. See First National Bank v. Michaels, 57 Mich.App. 468, 469-472, 226 N.W.2d 526 (1975). [Id. at 77, 244 N.W.2d 361.]
The Land Division Act was amended in 1996, after this Court's decision in Gondek. However, those amendments again failed to address the applicable burden of proof. It is understood that the Legislature is presumed to act with knowledge of longstanding judicial and administrative interpretations. Gordon Sel-Way, Inc. v. Spence Bros., Inc., 438 Mich. 488, 505-506, 475 N.W.2d 704 (1991); Van Buren Charter Twp. v. Garter Belt, Inc., 258 Mich. App. 594, 606-607, 673 N.W.2d 111 (2003). Thus, the Legislature's continued refusal to address the placement of the burden of proof under the Land Division Act can be considered as sanctioning this Court's decision in Gondek. See Smith v. Detroit, 388 Mich. 637, 650-651, 202 N.W.2d 300 (1972); Glancy v. Roseville, 216 Mich.App. 390, 394-395, 549 N.W.2d 78 (1996), aff'd 457 Mich. 580, 577 N.W.2d 897 (1998).[8]
*334 Plaintiffs moved for summary disposition pursuant to MCR 2.116(C)(10). Plaintiffs met their initial burden of presenting admissible evidence to support their contention that defendants could present no reasonable objection: the longstanding use of the south drive easement for utility access for Lots 3, 4, and 5. The burden then shifted to defendants to come forward with admissible evidence showing that their objection to plaintiffs' petition to revise the plat to allow for utilities in the central drive easement was reasonable, even though defendants were using the south drive easement for utility access. The trial court observed that defendants submitted no admissible evidence establishing a reasonable objection to the revision of the central drive easement to include an easement for utilities, especially given their longstanding use of the south drive easement for utilities. Instead, the trial court noted that defendants' objections related only to their private concerns and involved purely private interests, specifically, their purported interest in having Lot 2 remain vacant for their convenience.
The principles announced by this Court in Gondek remain applicable to actions under the Land Division Act. Therefore, the trial court did not err when it required defendants to state a reasonable objection when attempting to defeat plaintiffs' request to revise the plat to allow for utility access to Lot 2 through the central drive easement. Further, given the longstanding use of the south drive easement by certain defendants for access to utilities, the trial court did not err when it determined that defendants failed to meet their burden of providing admissible evidence of any reasonable objection to the revision.
Defendants reiterate that plaintiffs have the burden of establishing the extent of the easement. On this basis, defendants assert that the trial court erred in imposing a requirement that they offer a reasonable objection to the revision of the plat. This is the case when asking the trial court to interpret or declare the extent of an easement pursuant to common law. However, defendants offer this Court no authority for applying these rules to actions brought under the Land Division Act, in contravention of the Gondek Court's decision. Thus, defendants' assertions in this regard lack merit.
The trial court acted within its statutory authority under the Land Division Act when it considered plaintiffs' request to revise the plat. Moreover, it properly applied the principles set forth by this Court in Gondek in granting plaintiffs the requested relief.

D. Effect of Restrictive Agreement
Defendants argue that the trial court ignored the plain language of the restrictive agreement when it granted plaintiffs' requested relief. We disagree. Instead, we affirm the trial court's conclusion that the plain language of the restrictive agreement was not meant to "forever preclude" construction on Lot 2, but merely to prevent construction until sewer service was made available to that lot.
Restrictive agreements are grounded in contract. Stuart v. Chawney, 454 Mich. 200, 210, 560 N.W.2d 336 (1997). "[I]f contractual language is clear, construction of the contract is a question of law for the court." Meagher v. Wayne State Univ., 222 Mich.App. 700, 721, 565 N.W.2d 401 (1997). When a court construes a contract, the language used therein "should be given its ordinary and plain meaning." Id. at 722, 565 N.W.2d 401. "[C]ourts must also give effect to every word, phrase, and clause in a contract and avoid an interpretation that would render any part of the contract surplusage or *335 nugatory." Klapp v. United Ins. Group Agency, Inc., 468 Mich. 459, 468, 663 N.W.2d 447 (2003). Moreover, when construing the language of a restrictive agreement, "[t]he provisions are to be strictly construed against the would-be enforcer, . . . and doubts resolved in favor of the free use of property." Stuart, supra at 210, 560 N.W.2d 336.
Paragraph 3 of the restrictive agreement provides: "[I]t is hereby covenanted and agreed that no building, structure or dwelling shall be constructed on Lot 2 of said plat unless and until a municipal sanitary sewer line is made available to the premises." Defendants argued in the trial court that the language of the restrictive agreement prohibits construction on Lot 2 unless and until the owners of Lots 1, 3, and 4 grant Lot 2 an easement for municipal sewer service. The trial court disagreed with defendants' interpretation of the pertinent portion of the restrictive agreement, explaining as follows:
Defendants argue that this limitation was meant to forever restrict any and all construction on Lot 2. A plain reading of this restriction contradicts Defendant's [sic] argument: if the grantors wanted to forever preclude any construction on Lot 2, the restriction would have stated as much in explicit language by ending the provision after the word "plat" [so that it read "[t]hat it is hereby covenanted and agreed that no building, structure or dwelling shall be constructed on Lot 2 of said plat"]. Defendants' argument in this regard must therefore fail.
The trial court's conclusion properly gives effect to all pertinent language in the restrictive agreement. Conversely, defendants' urged interpretation would render more than a third of the words used in paragraph 3 of the agreement surplusage and would add additional terms, specifically that the owners of the other lots controlled if and when Lot 2 would be developed. Given that constructions that render any part of a restrictive agreement surplusage or nugatory must be avoided, Klapp, supra at 468, 663 N.W.2d 447, and that the language of a restrictive agreement must be strictly construed against defendants, with any doubts regarding the meanings of terms to be resolved in favor of the free use of property, Stuart, supra at 210, 560 N.W.2d 336, we conclude that the trial court did not err when it rejected defendants' interpretation of paragraph 3 of the restrictive agreement. Therefore, defendants' argument that the trial court ignored a valid restrictive agreement when it ordered the revision of the plat pursuant to MCL 560.221 and MCL 560.226(1) lacks merit.

III. Utility Easement by Necessity
On cross-appeal, plaintiffs argue that the trial court erred in declining to extend the doctrine of easement by necessity to provide for a utility easement to their property. Plaintiffs recognize that no Michigan court has extended this doctrine to encompass access to utilities, but they assert that, given that utility access is strictly necessary for a party to make reasonable use of property of this kind, this Court should do so. Whether Michigan law provides for the granting of an easement for utilities by necessity is an issue of first impression in this state and a question of law subject to review de novo. See Bennett v. Weitz, 220 Mich.App. 295, 299, 559 N.W.2d 354 (1996). Because the trial court, pursuant to the Land Division Act, revised the plat to create a utility easement for Lot 2, an easement by necessity was not necessary to provide utility access to Lot 2. Accordingly, to the extent that the trial court's revision of the plat to provide the utility easement is upheld, we *336 affirm the trial court's decision not to grant plaintiffs an easement by necessity. However, we hold that if the trial court had not revised the plat, or if another method by which to create a utility easement had not been available, the trial court would have erred when it failed to grant plaintiffs a utility easement by necessity to access Lot 2. Although the trial judge was correct when he noted that easements by necessity for utilities have yet to be recognized by the appellate courts of Michigan, today we determine that such easements exist at common law in Michigan.
An easement by necessity "may be implied by law where an owner of land splits his property so that one of the resulting parcels is landlocked except for access across the other parcel." Chapdelaine v. Sochocki, 247 Mich.App. 167, 172, 635 N.W.2d 339 (2001). The law presumes, in such situations, that the parties intended that the landlocked parcel be accessible, and, therefore, "[i]n a conveyance that deprives the owner of access to his property, access rights will be implied unless the parties clearly indicate they intended a contrary result." Id. at 173, 635 N.W.2d 339. As explained in Schmidt v. Eger, 94 Mich.App. 728, 732, 289 N.W.2d 851 (1980):
Before an easement will be implied [from necessity], the party who would assert the easement must establish that it is strictly necessary for the enjoyment of the property. Mere convenience, or even reasonable necessity, will not be sufficient if there are alternative routes, even if these alternatives prove more difficult or more expensive. All implied easements are based on the presumed intent of the parties, but this sort is additionally supported by the public policy favoring the productive and beneficial enjoyment of property.
A grant of an easement by necessity requires a showing of reasonable necessity.[9]Chapdelaine, supra at 173, 635 N.W.2d 339; Schmidt, supra at 732, 289 N.W.2d 851. In Schumacher v. Dep't of Natural Resources, 256 Mich.App. 103, 106, 663 N.W.2d 921 (2003), this Court stated, "The scope of an easement by necessity is that which is reasonably necessary for proper enjoyment of the property, with minimum burden on the servient estate."
It is undisputed that, before the trial court revised the plat to provide utility access to Lot 2 by way of the central drive easement, Lot 2 lacked access to utilities. 1 Restatement Property, 3d, Servitudes, § 2.15, comment d, p. 208, explains that utility easements have become increasingly *337 necessary for the reasonable enjoyment of property:
[T]he increasing dependence in recent years on electricity and telephone service, delivered through overland cables, justify [sic] the conclusion that implied servitudes by necessity will be recognized for those purposes. Whether access for other utilities and services has also become necessary to reasonable enjoyment of property depends on the nature and location of the property and normal land uses in the community.
Again, plaintiffs acknowledge that no Michigan court has extended the common-law doctrine of easement by necessity to encompass access to utilities. However, numerous cases from other states have determined that easements by necessity for utility access are appropriate given the need for utilities in modern life, public policy favoring productive use of land, and the need to effectuate the presumed intent of grantors of property. See Smith v. Heissinger, 319 Ill.App.3d 150, 155, 253 Ill.Dec. 543, 745 N.E.2d 666 (2001) (easement by necessity is not limited to ingress and egress only, but can exist for access to sewer lines, catch basins, and water supply so as to further the public policy favoring the full use of land); Brown v. Miller, 140 Idaho 439, 443, 95 P.3d 57 (2004), (easement by necessity "reasonably includes utilities for a single family residence"); Cline v. Richardson, 526 N.W.2d 166, 169 (Iowa App., 1994) (easement for ingress and egress includes a right to install utilities); Morrell v. Rice, 622 A.2d 1156, 1160 (Me., 1993) ("An easement created by necessity can include not only the right of entry and egress, but also the right to make use of the easement for installation of utilities, essential for most uses to which property may reasonably be put in these times."); United States v. 176.10 Acres of Land, 558 F.Supp. 1379, 1381-1382 (D.Mass., 1983) (easement by necessity includes the right to install utilities); Huggins v. Wright, 774 So.2d 408, 412 (Miss., 2000) (providing easement by necessity for ingress and egress and for utilities).
Plaintiffs assert that the utility services they seek to access using the existing central drive easement are "not only `normal in the area,' they are the same utilities the Defendants access through their `[south] drive easement.'" Plaintiffs further claim that utilities are "necessary for plaintiffs to make reasonable use of their property, which at all times was intended to be used as a residential lot. Defendants argue that plaintiffs are not entitled to an easement by necessity for utility access because the doctrine of easement by necessity is limited to affording parties access to their property and plaintiffs have access to their property by way of the central drive easement. Moreover, defendants argue that the property is not rendered "unproductive" in the absence of access to utilities because plaintiffs can continue to use their property for beach access in the same manner as they have used the property for the past 30 years.
Given that the property is residential in character, that it has been approved for construction of a residence, that plaintiffs cannot construct their home without access to utilities, and that any additional burden on the servient estate caused by the placement of utilities in the central drive easement (beyond the period allowing for their initial installation) would seemingly be minimal,[10] and, moreover, given society's *338 "increasing dependence in recent years on electricity" and other utilities, we conclude that plaintiffs' access to utilities would be "necessary to [the] reasonable enjoyment" of their property, consistent with "the nature and location of the property and normal land uses in the community." Restatement, p. 208. Therefore, if access to utilities had not been provided through revision of the plat, plaintiffs would have been entitled to an implied easement by necessity allowing access to these utilities.
Accordingly, the common-law doctrine of easement by necessity includes not only physical access to landlocked property, but also access to utilities for properties landlocked from utilities unless, consistent with the traditional principles of easement by necessity, the parties to the conveyance that left the property without such access "clearly indicate[d] that they intended a contrary result." See Chapdelaine, supra at 173, 635 N.W.2d 339. This declaration affords any owner of Michigan property who does not have access to utilities a potential implied right to such access, provided that there is no clear indication that a contrary result was intended and provided that access to utilities is necessary for the reasonable enjoyment of the property, given the location of the property and normal land uses in the community. This conclusion is consistent with both the principles underlying the doctrine of easement by necessity and the realities of modern life.
Affirmed.
HOEKSTRA, J., concurred.
ZAHRA, P.J. (dissenting).
I respectfully dissent. Contrary to the conclusions reached by the majority, I conclude that the Land Division Act, MCL 560.101 et seq., does not permit a court to change substantive private property rights through the plat-revision process. Further, I conclude that plaintiffs are not entitled to an easement by necessity, because they have access to the land through an existing drive easement, that they are free to enjoy it in the same manner as their predecessors always have, and that they acquired their interest subject to a restrictive agreement-which agreement would be all but nullified under the majority's opinion. Therefore, I would reverse the trial court's decision to the extent that it used the Land Division Act to alter the parties' substantive property interests. I would also affirm the trial court's determination that plaintiffs do not have an easement by necessity and that the easement in question is a drive easement limited to that use. I would remand for entry of an order granting defendants' motion for summary disposition.

I. The Trial Court's Decision
The trial court granted plaintiffs' motion for summary disposition delineating the extent of the central drive easement as platted. The court explained that a declaration of the extent of plaintiffs' rights in the platted easement was necessary in order to guide plaintiffs' future conduct and preserve their legal rights. The trial court then concluded that the platted "drive easement" was unambiguous. It entitled plaintiffs to use the easement as "a [right of] way which grants a right of passage over land." However, the trial court refused to establish an easement by necessity for public utilities, thus granting defendants' motion for summary disposition on that part of the complaint. Finally, the trial court considered whether plaintiffs were entitled to revision of the plat pursuant *339 to MCL 560.221 and MCL 560.226(1). The trial court noted that plaintiffs had relied on Feller v. Sylvan Twp, unpublished opinion per curiam of the Court of Appeals, issued January 7, 2000 (Docket No. 212624), 2000 WL 33539381, in their motion for summary disposition "for the proposition that the court shall proceed to alter or vacate, correct or revise, the plat or part thereof, unless there is a reasonable objection."[1] The trial court ultimately concluded that plaintiffs met the burden necessary, such that a revision of the plat, to include a utility easement coexistent with the central drive easement for the benefit of Lot 2, was warranted. The trial court observed that defendants "have already run utility lines under their own [south] drive easement" and, therefore, it found plaintiffs' argument, that defendants could not reasonably object to plaintiffs' request to amend or revise the plat to allow plaintiffs to run utility lines under the central drive easement, to be "very compelling." Further, citing Yonker v. Oceana Co. Rd. Comm., 17 Mich.App. 436, 169 N.W.2d 669 (1969), the trial court also stated that defendants had not
submitted any admissible evidence which would support a reasonable objection to [p]laintiffs' request to revise the plat, nor have they offered any admissible evidence of any reasonable objection which would be of any value to the public. All of the objections asserted by [d]efendants relate [only] to private concerns and involve purely private interests.
The trial court thus granted plaintiffs' motion for summary disposition, ruling that plaintiffs "may revise the plat to include a utility easement over the central drive easement for the benefit of Lot 2."

II. Analysis
On appeal, defendants argue that the trial court erred by allowing plaintiffs to acquire an interest in property through the plat amendment process under the Land Division Act. The majority agrees with the trial court, although for different reasons. Whereas the trial court relied on Feller and Yonker, as well as defendants' own conduct with respect to use of their south drive easement, the majority relies on its interpretation of the language of the statute. I conclude that both analyses are erroneous.

A. The Plat-Amendment Process
1. Rules of Statutory Construction
The primary goal of statutory interpretation is to ascertain and give effect to the Legislature's intent as expressed by the language of the statute. Neal v. Wilkes, 470 Mich. 661, 665, 685 N.W.2d 648 (2004). When determining intent, a court must look first at the language of the statute. If the language is clear and unambiguous, judicial construction is not permitted. Yaldo v. North Pointe Ins. Co., 457 Mich. 341, 346, 578 N.W.2d 274 (1998). Unless defined in the statute, every word or phrase used should be given its plain and ordinary meaning, considering the context in which the words are used. Lewis v. LeGrow, 258 Mich.App. 175, 183, 670 N.W.2d 675 (2003). The court may consult a dictionary to determine the ordinary meaning of undefined words in the statute. *340 Id. Additionally, when interpreting statutes, every word, phrase, and clause must be given effect, and an interpretation that would render any part of a statute surplusage or nugatory should be avoided. Grimes v. Dep't of Transportation, 475 Mich. 72, 89, 715 N.W.2d 275 (2006).
2. The Land Division Act Does Not Authorize Changes in Land Interests Through the Plat-Revision Process
The key provision of the act at issue here, MCL 560.221, provides: "The circuit court may, as provided in sections 222 to 229[[2]] vacate, correct, or revise all or a part of a recorded plat." The trial court adopted the whole of MCL 560.221 as a judicial fiat to alter substantive property rights; the majority goes further by analyzing the words "vacate," "correct," and "revise" to authorize a change in the parties' substantive property interests. However, both analyses fail to note that the statute merely authorizes a change in "all or a part of a recorded plat."
The word "plat" is defined in the act as "a map or chart of a subdivision of land." MCL 560.102(a). This definition, together with a review of the other uses of the word "plat" in the act (see Yaldo, supra at 346, 578 N.W.2d 274), leaves no doubt that a plat is merely a two-dimensional description of physical property interests in some specific place; or, as the majority itself states: "The provisions of the Land Division Act indicate that a plat filed with a municipality is an official description of the subdivided parcel represented by the plat and the lots therein." Ante at 329 (emphasis added). Indeed, the majority appears confused when it continues by stating: "First, the requirements of MCL 560.135 through 560.141 ensure that the map of the subdivision filed with the final plat accurately reflects the division of the property in the parcel." Ante at 329 (emphasis added). The words "description," "map," and "reflects," as used by the majority, are consistent with my conclusion that a plat is a map and not, by itself, a determination of substantive property interests. Moreover, the majority's notion that a "map of the subdivision filed with the final plat" indicates that the plat is something other than and in addition to a map of the subdivision (e.g., "filed with"), which by the terms of the statute it is not.
Additionally, the majority did not engage in analyzing the word "plat" as it is used throughout the statute. Had it done so, it would have found numerous examples within the act that support my conclusion.
MCL 560.103(3) states: "A survey and plat shall be made when any amendment, correction, alteration or revision of a recorded plat is ordered by a circuit court." If the statutory provisions at issue in this case stand for the proposition that a circuit court may change the substantive property rights of landowners, then a "survey" in order to make a new plat would be superfluous because the court would have already determined the changed boundaries.
MCL 560.105 conditions the approval of a final or preliminary plat, in part, on compliance with
(d) The rules of the state transportation department relating to provisions for the safety of entrance upon and departure from the abutting state trunk line highways or connecting streets and relating to the provisions of drainage as required by the department's then currently published standards and specifications.
* * *

*341 (f) The rules of the department of environmental quality for the determination and establishment of floodplain areas of rivers, streams, creeks, or lakes, as provided in this act, as published in the state administrative code.
These provisions indicate that a plat must contain certain markings to show where the state has established roads, drains, and floodplains, i.e., where they exist on a map, not whether a landowner has property rights in them. Moreover, interests in property would be subject to approval of various state agencies  making them arbiters of property interests.
MCL 560.206(1), concerning reconciliation of boundaries within plat, states: "The surveyor making the plat shall reconcile any discrepancies that may be revealed, so that the plat as certified to the governing body shall be in conformity with the records of the register of deeds as nearly as is practicable." (Emphasis added.)
If plats were determinations of substantive property interests, then MCL 560.206(1) would eviscerate settled property law because property interests would no longer be subject to precise definition but would, instead, be defined as "nearly as is practicable." This cannot be so. Property law  most notably a determination of the true hairline between neighboring interests  is at its core a zero-sum proposition, in which the loss by one is the gain of another if neither can have more than the constant sum of both. The language of MCL 560.206(1) contemplates acceptable gray areas. No determination of substantive property interests would permit such a nebulous result. Interpreting a plat to be the equivalent of a map, as this Court is obligated to do under the statutory definition of the word "plat," a map may be marginally imprecise yet still serviceable by putting purchasers on notice of the approximate location of interests.
MCL 560.212 also makes it clear that a plat is nothing more than a description of preexisting land interests. It states, in pertinent part:
Reference to any land, as it appears on a recorded assessor's plat is sufficient for purposes of assessment and taxation. Conveyance may be made by reference to the plat and shall be as effective to pass title to the land so described as it would be if the premises had been described by metes and bounds. The plat or record thereof shall be received in evidence in all courts and places as correctly describing the several parcels of land therein designated. [Emphasis added.]
Besides the recurring references in MCL 560.212 to a plat as merely a description of interests in land, analysis of other language within the provision supports this conclusion. First, the language "metes and bounds" refers to a description of land. See Cramer v. Ballard, 315 Mich. 496, 500, 24 N.W.2d 80 (1946). The term "metes and bounds" is also a legal, rather than an informal, description of land and is the oldest method of land description, dating to colonial America. 14 Powell, Real Property, § 81A.05[2][a] and [b]. But a description of land is generally not used as a means of determining rights in interests of the land. 14 Powell, § 81A.05[1][b].[3] See also Zurcher v. Herveat, 238 Mich. App. 267, 282, 605 N.W.2d 329 (1999), in which this Court recognized that an adequate description of the land is but an essential part, among several, of a contract *342 for the sale of land. So, rather than dictating that a conveyance took place, the plat represents merely an adequate description of land  thus fitting the rest of the language of MCL 560.212 that compels all courts to receive a plat as evidence of a particular property interest. Such evidence would be persuasive, but so would a recorded deed, or a mortgage, or other parts of a contract, or some other written instrument purporting to determine the interests at stake in a case. Allowing the trial court here to use a mere description of property interests to change substantive property interests would render all but useless other related written instruments introduced into evidence.
I also disagree with the majority opinion's application of the word "revise," which it uses as its chief means of supporting the conclusion that the statute gives a trial court plenary authority to alter substantive property rights.[4] On the contrary, I do not find any portion of the statute to be surplusage or rendered nugatory by my proposed interpretation. "Revise" means "to amend or alter" or "to alter . . . in order to correct, improve or update," Random House Webster's College Dictionary (2000), or "[t]o go over a thing for the purpose of amending, correcting, rearranging, or otherwise improving it[.]" Black's Law Dictionary (5th ed). Given these definitions, the statute allows the court to "revise" a plat so that it reflects a change in the underlying interests, even those arising other than by mistake, such as by abandonment of an easement or acquisition of an interest by adverse possession or acquiescence (in which case the revision would be to "update" the plat, as under the Random House definition) or where an easement by necessity can be established ("amending" it, as under the Black's Law definition). In any event, there is in this case no underlying change in interests  whether by conveyance, abandonment, mistake, etc.  that would allow the court to alter the plat to reflect that change.
Finally, given the restrictive covenant that exists in this case, I am troubled by the majority's conclusion that the Land Division Act allows a circuit court to change substantive property rights through the plat-amendment process. Plaintiffs do not dispute that they had notice of the restrictive agreement  it was signed on December 10, 1974, by Jane H. Henkle (plaintiff Janice H. Tomecek's mother and plaintiffs' predecessor in interest) and notarized. In fact, Henkle signed *343 the restrictive agreement on the same day she signed the plat, and both documents were recorded with the Berrien County Register of Deeds and given the same liber and page number. "Under Michigan law, a covenant constitutes a contract, created by the parties with the intent to enhance the value of property." Hickory Pointe Homeowners Ass'n v. Smyk, 262 Mich.App. 512, 515, 686 N.W.2d 506 (2004), citing Terrien v. Zwit, 467 Mich. 56, 71, 648 N.W.2d 602 (2002). "When interpreting restrictive covenants, therefore, when the intent of the parties is clearly ascertainable, courts must give effect to the instrument as a whole." Hickory Pointe Homeowners, supra at 515-516, 686 N.W.2d 506, citing Cooper v. Kovan, 349 Mich. 520, 527, 84 N.W.2d 859 (1957). Thus, the majority's interpretation of the powers granted by the statute place it directly in conflict when, as in the case here, otherwise enforceable restrictive agreements exist, which covenants are nullified by such use of the act.

3. The Trial Court's Reliance Is Misplaced
I also do not find persuasive those cases the trial court cited and relied on for its determination. In Feller, this Court did not find it necessary to engage in statutory analysis to determine whether the act gives courts the ability to change substantive property interests by amending the plat. In Feller, the plaintiffs asked the trial court to use the act to vacate and relocate a road. The plaintiffs submitted
documentary evidence of the agreement . . . which gave defendants access to their easement from the relocated Ridge Road. Lack of access to the easement was the basis of defendants' objection to the vacation and relocation of Ridge Road. Thus, plaintiffs had shown . . . that the basis for defendants' objection had been eliminated. [Feller, supra, slip op at 2.]
Further, the Court in Feller noted that the easement itself  the defendants' substantive property interest  was otherwise unaffected by changing the plat. Id. at 3. In this case, defendants' substantive interest would be affected by changing the plat. Therefore, any reliance by the trial court on Feller, even if it were binding on this Court, is misplaced.
Similarly, Yonker involved an attempt by the plaintiffs in that case to vacate a county road. The road had been dedicated to the public and accepted by the county when the area was platted. A "dedication, gift or grant" of land vests a fee simple interest in the donee. MCL 560.253(1).[5] Moreover, the deeds of the plaintiffs  private landowners whose property abutted the road  "were made specifically subject to or excepted the road. The deeds to the land not subdivided[[6]] were made `subject to highway or roadway, if any.'" As such, no substantive private property interests were at stake as they are in this case. Notwithstanding that Yonker was decided under the predecessor of the Land Division Act, it is irrelevant here because the *344 trial court used it for the rule that a defendant's reasonable opposition to a change in a plat must also be for a "public purpose." Here, the question is whether a circuit court may change substantive private property interests by changing a plat.
I conclude that, in order to change a plat under MCL 560.221, the trial court would have first had to determine that plaintiffs prevailed on a claim to change their substantive property interests in the drive easement, e.g., abandonment, necessity, mutual mistake in the conveyance, etc. In the absence of such a determination, the trial court should have concluded that it had no power to use the act to effect a change in such interests.

B. Plaintiffs Are Not Entitled to an Easement by Necessity
Plaintiffs claim on cross-appeal, as they did in the trial court, (1) that they are entitled to an easement by necessity because the original grantors intended that the owners of Lot 2 would be able to build a house there, (2) that other jurisdictions and authorities have granted or would grant similar easements for modern utility use, (3) that Michigan's jurisprudence should evolve along the same lines as that of other jurisdictions, and (4) that defendants would bear no burden by such a grant.
This Court reviews for clear error a trial court's determinations relating to the extent of a party's rights under an easement. Blackhawk Dev. Corp. v. Village of Dexter, 473 Mich. 33, 40, 700 N.W.2d 364 (2005). However, this Court reviews de novo a trial court's determination regarding summary disposition. Id. Easements are, generally, limited to a specific purpose. Dep't of Natural Resources v. Carmody-Lahti Real Estate, Inc., 472 Mich. 359, 378-379, 699 N.W.2d 272 (2005).
Only if the language granting the easement is ambiguous may a court use extrinsic evidence to determine the scope of the easement. Blackhawk, supra, at 48-49, 700 N.W.2d 364. Further: "The use exercised by the holders of the easement must be reasonably necessary and convenient to the proper enjoyment of the easement, with as little burden as possible to the fee owner of the land." Unverzagt v. Miller, 306 Mich. 260, 265, 10 N.W.2d 849 (1943).
The original grantors' intent, as expressed in the putative conveyances of 1978 and 1984, is irrelevant here because the language establishing the easement is unambiguous. The plat labels the easement at issue in this case "Drive Easement" and gives its dimensions. Further, the "Proprietor's Certificate" on the plat states, in pertinent part, that "the public utility easements are private easements and that all other easements are for the uses shown on the plat. . . ."
Michigan law recognizes that an easement by necessity may arise when a landowner has subdivided his or her property but has left himself or herself landlocked. Chapdelaine v. Sochocki, 247 Mich.App. 167, 172-173, 635 N.W.2d 339 (2001). In Chapdelaine, this Court also determined that such an easement would be granted for access to the property unless the conveyance between the parties indicated their intent not to do so. Id. at 173, 635 N.W.2d 339.
In this case, plaintiffs are not landlocked  they still have access to Lot 2 by the drive easement. Therefore, because it is not necessary to relieve plaintiffs from being landlocked, no such easement can arise.
Alternatively, plaintiffs argue, and the majority agrees, that Michigan should adopt what plaintiffs refer to as a more modern approach to easements by necessity *345 under 1 Restatement Property, 3d, Servitudes, § 2.15, p. 202,[7] which reads:
A conveyance that would otherwise deprive the land conveyed to the grantee, or land retained by the grantor, of rights necessary to reasonable enjoyment of the land implies the creation of a servitude granting or reserving such rights, unless the language or circumstances of the conveyance clearly indicate that the parties intended to deprive the property of those rights.
Our Supreme Court, in Carmody-Lahti, supra at 379 n. 42, 699 N.W.2d 272, rejected an overly broad reading of a similar passage in the Restatement. Although Carmody-Lahti involved a railroad easement, which the Court distinguished from other types of easements, the Court observed that easements serve a particular purpose even though the "manner, frequency, and intensity"[8] of the particular purpose might change from time to time, which change would allow the dominant estate to be reasonably enjoyed. Id. Following Carmody-Lahti, I conclude that easements in Michigan may change by some degree, but they must retain the particular purpose for which they were created. In my opinion, the majority impermissibly changes the particular purpose of the drive easement in this case to include various utilities and sewer service.
Further, the so-called necessity in this case would not exist but for the restrictive agreement that plaintiffs had full knowledge of before acquiring their interest in the land. Put another way, plaintiffs now seek an easement by necessity for a situation that they, by way of their predecessors, created. If the restriction against building on Lot 2 did not exist, and plaintiffs could build a home using a well and a septic field, then a sewer easement would not be a necessity. In essence, the majority's creation of a new rule eviscerates an existing contract agreed to by plaintiffs.
For the foregoing reasons, I would reverse the trial court's determination that the Land Division Act permits a court to change substantive property rights through the plat-amendment process and would affirm the trial court's conclusions that the drive easement is limited to a right of passage and that plaintiffs are not owed an easement by necessity.

APPENDIX
*346 
NOTES
[1] Defendants/counterplaintiffs-appellants/cross-appellees and defendants-appellants/cross-appellees are represented by the same counsel and have filed a single brief in this Court. For purposes of this opinion, we refer to them collectively as "defendants," without distinction based on whether they were also counterplaintiffs in the proceedings before the trial court. Defendants Indiana Michigan Power Company, the Michigan Department of Labor and Economic Growth, and the Berrien County Drain Commissioner have entered appearances in this matter as defendants-appellees and have retained separate counsel, but have not filed briefs. Therefore, we will not discuss them separately in this opinion.
[2] Jane Henkle is O.T. Henkle's daughter and plaintiff Janis Tomecek's mother.
[3] A drawing of this plat is appended to these opinions.
[4] The northern half of the central drive easement is identical to the easement in the 1967 grant allowing for access to the "common beach area."
[5] These exceptions include the following: a state highway or federal aid road, which shall only be vacated, corrected, or revised by the state transportation department; a county road, which shall only be vacated, corrected, or revised by the county road commission having jurisdiction over it; and a part of a street or alley under the jurisdiction of a city, village, or township or a public walkway, park, public square, or any other land dedicated to the public other than for pedestrian or vehicular travel, which shall only be vacated, corrected, or revised by both a resolution or other legislative enactment of the governing body of the municipality and by court order. MCL 560.226(1)(a) through (c).
[6] In Gondek, this Court referred to the act as the Subdivision Control Act. However, the title of the act changed after the Gondek decision was released. Now, the Subdivision Control Act "shall be known and may be cited as the `land division act.'" MCL 560.101, as amended by 1996 P.A. 591.
[7] As discussed later, § 226 was amended in 1996 to provide: "Upon trial and hearing of the action, the court may order a recorded plat or any part of it to be vacated, corrected, or revised. . . ." MCL 560.226(1).
[8] In Jones v. Dep't of Corrections, 468 Mich. 646, 657, 664 N.W.2d 717 (2003), our Supreme Court declined to apply the "reenactment rule," which imposes on the Legislature a duty to show its intention to repudiate a judicial construction with which it disagrees, explaining that such a rule "cannot be used as a tool to circumvent the plain and unambiguous language of a statute." Here, however, there simply is no language addressing the burden of proof. Thus, the notion that the Legislature's failure to act in the face of this Court's decision in Gondek sanctions that decision is not being offered "as a tool to circumvent the plain and unambiguous language of a statute," but to fill a gaping hole in the statute, which the Legislature has repeatedly declined to remedy. Our Supreme Court's holding in Jones is inapposite.
[9] Older Michigan cases spoke of a requirement of strict or absolute necessity. See Waubun Beach Ass'n v. Wilson, 274 Mich. 598, 609, 265 N.W. 474 (1936) (discussing a "right of way being one of strict necessity, if such right exists at all, and not one of mere convenience"). However, as this Court explained in Schmidt, supra at 733-735, 289 N.W.2d 851, traditionally, strict necessity was required for assertion of an implied reservation of an easement by the grantor as distinct from an implied grant of an easement to the grantee. This distinction was eliminated in Harrison v. Heald, 360 Mich. 203, 103 N.W.2d 348 (1960), at least with regard to easements implied from a "quasi-easement," that is, an obvious and apparent servitude existing in favor of one parcel over the other before severance of the two parcels. Schmidt, supra at 733-735, 289 N.W.2d 851. More recently, this Court declared that an easement by necessity requires that the party asserting the right to the easement establish that "the easement is reasonably necessary, not strictly necessary, to the enjoyment of the benefited property." Chapdelaine, supra at 173, 635 N.W.2d 339 (emphasis added). Thus, the law now seems settled that the necessary showing to warrant an implied easement, whether by necessity or by quasi-easement, is one of reasonable necessity, not strict necessity. Id.; Schmidt, supra at 735, 289 N.W.2d 851.
[10] Defendants assert that the additional burden on their properties would be significant. However, it is clear that the burden to which defendants object is not a result of the presence of utilities under the drive easement, but the result of allowing such utilities: the presence of a home on Lot 2. We note that defendants' desire that Lot 2 remain vacant is not a proper consideration in evaluating whether the presence of utility lines under the central drive easement constitutes an additional burden on the servient estates.
[1] This Court adopted the "reasonable objection" standard in In re Gondek, 69 Mich.App. 73, 244 N.W.2d 361 (1976), which was also cited by the trial court, with respect to the property interests at issue in that case. The majority addresses the trial court's determination with respect to this issue; however, because I conclude that the Land Division Act did not grant the trial court the authority to change the substantive property interests at issue in this case, this opinion will not address whether defendants needed to raise a reasonable objection to the petition.
[2] MCL 560.226(1) provides, in pertinent part: "Upon trial and hearing of the action, the court may order a recorded plat or any part of it to be vacated, corrected, or revised. . . ."
[3] "The description of the land should not generally contain a statement of the type of estate or interest that is being conveyed by the deed. (In other words, it should not include language describing an estate such as a fee simple or remainder, or another interest such as an easement or license.)" 14 Powell, § 81A.05[1][b].
[4] Specifically, the majority contends:

"Revise" is defined as "to amend or alter" or "to alter (something written or printed), in order to correct, improve or update" by Random House Webster's College Dictionary (2000) and as "[t]o go over a thing for the purpose of amending, correcting, rearranging, or otherwise improving it" by Black's Law Dictionary (6th ed). Defendants' interpretation of the trial court's authority under the act, specifically that it could only correct the plat to depict preexisting substantive property rights, would be persuasive only if the act afforded the court the authority to vacate or correct a plat. Defendants' interpretation ignores the term "revise" in the statute and renders the use of that term surplusage or nugatory. This is impermissible. See Grimes [v. Dep't of Transportation, 475 Mich. 72, 89, 715 N.W.2d 275 (2006)]. By affording a trial court the authority to "revise" a plat, the plain language of the Land Division Act permits a trial court to act beyond merely correcting errors. Instead, MCL 560.226(1) allows a trial court to order the alteration of a plat to relinquish an interest, to remove errors or faults from the plat, or to amend, improve, or update it. Therefore, defendants' assertion that the trial court was precluded from considering plaintiffs' petition for revision of the plat and their limited construction of the trial court's authority under the Land Division Act lack merit. [Ante at 334-36.]
[5] MCL 560.253(1) provides:

When a plat is certified, signed, acknowledged and recorded as prescribed in this act, every dedication, gift or grant to the public or any person, society or corporation marked or noted as such on the plat shall be deemed sufficient conveyance to vest the fee simple of all parcels of land so marked and noted, and shall be considered a general warranty against the donors, their heirs and assigns to the donees for their use for the purposes therein expressed and no other.
See also Martin v. Beldean, 469 Mich. 541, 542, 677 N.W.2d 312 (2004).
[6] Part of the road was outside the plat.
[7] More specifically, the trial court cited comment d to this section, which provides, in part:

[T]he increasing dependence in recent years on electricity and telephone service, delivered through overland cables, justify [sic] the conclusion that implied servitudes by necessity will be recognized for those purposes. Whether access for other utilities and services has also become necessary to reasonable enjoyment of property depends on the nature and location of the property and normal land uses in the community. [1 Restatement Property, 3d, Servitudes, § 2.15, comment d, p. 208.]
[8] See 1 Restatement Property, 3d, Servitudes, § 4.10, p. 592.