STUART v CHAWNEY

Docket No. 104957. Decided April 1, 1997. On application by the defend-
ants for leave to appeal, the Supreme Court, in lieu of granting
leave, reversed the decision of the Court of Appeals and reinstated
the decision of the circuit court.

In August 1991, Julie H. Stuart and several other homeowners in the
twelve-lot, platted Lincoln Green subdivision in the Village of Bev-
erly Hills, Oakland County, brought an action in the Oakland Cir-
cuit Court against Amarjit S. and Pardes B. Chawney, seeking to
permanently enjoin construction of a home on land adjoining Lin-
coln Green. The parcel was subject to a Lincoln Green building
restriction, and the homeowners asserted that the planned house
was not compatible and harmonious with existing structures, as
required by the agreement. Before beginning construction, the
defendants had sought through the Village of Beverly Hills and the
Oakland County Register of Deeds to locate the subdivision com-
mittee or association that was authorized to approve the project. A
building official for the village referred them to the homeowners'
association of a neighboring subdivision because the village had no
record of a Lincoln Green subdivision or homeowners' association.
The defendants submitted their plans to that association and
received written approval from the association and the village. Fol-
lowing a bench trial, the court, Francis X. O'Brien, J., found no
cause of action against the defendants. It also found the structure
to be in compliance with code and ordinance requirements, and the
requirement of harmonious development to be vague, ambiguous,
and overbroad on its face. The court further found that the defend-
ants first presented their plans in 1987, and the facts and evidence
justified applying the defenses of laches, estoppel, and waiver
because the plaintiffs failed to take the proper action under the
restriction agreement to protect their interests. The Court of
Appeals, D. E. HOLBROOK, JR., P.J., and R. A. BENSON, J. (WHITE, J.,
dissenting), reversed and remanded in an unpublished opinion per
curiam, finding that although the plaintiffs did not constitute a
properly formed architectural control committee, each possessed
an individual cause of action to enforce the restrictive covenants. It
held that the circuit court erred in finding the agreement to be
vague, ambiguous, overbroad, and unenforceable, and that the equi-

table defenses of laches, estoppel, and waiver did not apply (Docket No. 154645). The defendants seek leave to appeal.

In an opinion per curiam, signed by Chief Justice MALLETT, and Justices BRICKLEY, CAVANAGH, RILEY, and WEAVER, the Supreme Court held:

In this case there was no breach of the agreement because there was no properly constituted architectural control committee.

1. Negative covenants such as those in the restriction agreement at issue are grounded in contract. In an action to enforce such a covenant, the intent of the drafter controls. The provisions are to be strictly construed against the enforcer, and doubts resolved in favor of the free use of property. Although the defendants did not submit proposed design plans for their home until 1991, the plaintiffs were aware several years earlier of the need for an architectural control committee. Probable construction of a new house became a reality in 1987.

2. This is not an instance where a purchaser of land subject to restrictive covenants either disregarded or flouted them. The defendants sought both through the Village of Beverly Hills and the Oakland County Register of Deeds to locate the committee or association authorized to approve a proposed structure. They were informed by a village official to seek approval of another association. The village and the association later approved their plans. Although the Court of Appeals correctly concluded that the committee contemplated by the restriction agreement never was properly constituted, it erred in finding that to be irrelevant because the plaintiffs had individual causes of action to enforce the restrictive covenants. As the dissent recognized, the critical question was whether there was a breach of the agreement. Where the defendants complied with all government regulations and objective criteria under the agreement, and the entity charged with determining compliance with other standards did not exist, there was no violation to redress on an individual basis or otherwise.

Reversed.

Justice BOYLE concurred only in the result.

Justice KELLY took no part in the decision of this case.

*Butzel, Long* (by *Alan S. Levine*) for the plaintiffs.

*Hertz, Schram & Saretsky, P.C.* (by *Steve J. Weiss, Robert P. Geller,* and *Eva T. Cantarella*), for the defendants.

PER CURIAM. We are required in this property dispute to determine whether the defendants violated recorded subdivision restrictions when they built their home in the Village of Beverly Hills, Oakland County, in 1991. We hold that there was no breach, and we thus reverse the decision of the Court of Appeals and reinstate the decision of the circuit court.

I

In 1967, a twelve-lot subdivision known as Lincoln Green was platted in the Village of Beverly Hills in Oakland County. A restriction agreement for the subdivision was duly filed by developer Gerald J. Shannon with the county Register of Deeds.

By 1974, houses had been built on all twelve lots. Each had elements of traditional colonial styling, including pitched roofs, horizontal siding, brick facades, and double-hung windows. All of them faced Long Bow Court, which was the only street in Lincoln Green. Long Bow Court ended at Fourteen Mile Road on the north and formed a cul-de-sac circle on the south.

The land directly southeast of the cul-de-sac circle was not part of Lincoln Green. Rather, this property belonged to a large condominium project that was constructed in the mid-1980s. The parcel immediately adjacent to Lincoln Green had not been built upon, however.

In 1987, Lincoln Green homeowners were notified in writing that the owners of the condominium property were planning to construct new homes on the land abutting Lincoln Green. Following a series of public hearings, the condominium developers agreed

to split off from their acreage a parcel facing Long Bow Court, next to the Lincoln Green lot that was the furthest southeast. The developers further agreed that this would be a single-family site, and that it would be subject to the restriction agreement recorded by Mr. Shannon in 1967.

The defendants signed an offer in 1987 to purchase the parcel on the condominium property from the owner, Oak Pointe, Inc. There is no dispute that they knew at the time of purchase in 1988 that the site was subject to the Lincoln Green restriction agreement.

II

Several of the twenty-five provisions in the 1967 restriction agreement are relevant to this appeal. Under the heading "Developer," paragraph 1 states:

> For the purpose of this Agreement, Gerald J. Shannon, whose principal place of business is located at 2685 Woodward, Bloomfield Hills, Michigan, or his successors and assigns, is hereby appointed, designated and hereinafter referred to as the "Developer."

Paragraphs 17 and 18, entitled "Architectural Control Committee" and "Committee Approval," respectively, are at the core of the dispute. Paragraph 17 states:

> The "Developer" heretofore designated, his successors and assigns, shall constitute the Architectural Control Committee. The Architectural Control Committee shall have authority to pass on plans and specifications and otherwise guide the development of the subdivision as planned and restricted herein.

Paragraph 18 is a lengthy provision, the essence of which is that written approval from the committee is

required before construction of houses and such things as fences and decks. The following language has been of particular concern:

> The committee shall have the right to refuse to approve any such plans or specifications or grading plans which are not suitable or desirable in its opinion for aesthetic or other reasons. In so passing upon such plans, specifications and grading plans, it shall have the right to *take into consideration suitability of the proposed buildings or other structure to be built on the site upon which it is proposed to erect the same, the harmony thereof with the surroundings and the effect of the building or other structure as planned on the outlook from adjacent or neighboring property.* It is understood that *the purpose of this paragraph is to cause the subdivision to develop into a beautifully, harmonious, private residence section* and that the Architectural Control Committee shall not be arbitrary in its decisions. [Emphasis added.]

Disagreements under paragraph 18 are to be resolved through "arbitration by competent architects in the usual manner." In the event of a violation of the restriction agreement, paragraph 19 gives "the parties" the right to summarily remove the offending structure, at the owner's expense, in addition to "all other remedies."

Paragraph 20 provides that the covenants are to last twenty-five years from the date the agreement was recorded, "after which time said covenants shall be automatically extended for successive periods of ten (10) years unless an instrument signed by a majority of the then owners of the lots has been recorded, agreeing to change said covenants in whole or in part." Under paragraph 21, the failure to enforce a covenant is not a waiver of the right to do so.

Finally, under the heading "Assignment," paragraph 24 provides:

> Any or all of the rights, powers and obligations, title, easements and estates reserved or given to the parties in this agreement, the "Developer" or the Architectural Control Committee, *may be assigned to any corporation or association, composed of one-half (½) or more of the owners of property in said plat,* that will agree to assume said rights, powers, duties and obligations and carry out and perform the same; *any such assignment or transfer shall be made by appropriate instrument in writing* in which the assignee or transferee shall join for the purpose of evidencing its consent to the acceptance of such rights and powers, and such assignee or transferee shall thereupon have the same rights and powers and be subject to the same obligations and duties as are herein given to and assumed by the parties hereto, and the parties hereto thereupon being released therefrom. *When all of the lots in said plat have been sold by the parties hereto, upon demand by parties hereto a corporation or assiciation* [sic] *of the owners of lots in said plat shall be formed* which shall assume said rights, powers, duties and obligations and carry out and perform the same, and the parties hereto thereupon shall be released. [Emphasis added.]

III

In late 1990 and early 1991, the defendants began preparations to build a home on their site. Defendant Amarjit S. Chawney, a licensed architect, sought through the Village of Beverly Hills and the Oakland County Register of Deeds to locate the subdivision committee or association that was authorized to approve the project.

Donald Smith, the building official for the village and a licensed architect, referred Mr. Chawney to the homeowners' association for a neighboring subdivi-

sion. According to village records, the Nottingham Forest Homeowners' Improvement Association had jurisdiction over all lots on Long Bow Court, including the defendants' property. Mr. Smith later testified that the village had maintained a roster of homeowner associations for fifteen years, and that the list was printed on an annual calendar sent to each resident. The village had no record of a Lincoln Green subdivision or homeowners' association.

In the spring of 1991, the defendants submitted their plans to a woman named Patricia Burch, who had been identified by Mr. Smith as the appropriate contact in the Nottingham Forest association. The defendants also submitted their plans to Mr. Smith. By early June 1991, they had the written approval of both parties.[1] The site was cleared, and excavation was authorized by the defendants in July.

Mr. Chawney was contacted a short time later by an attorney for a group of residents who were concerned that the design of the defendants' home was not compatible and harmonious with existing structures on Long Bow Court. The house was to be a modern-looking three-story structure, with a flat roof, vertical wood siding, unshuttered casement windows, and rounded corners made of glass blocks.[2]

---

[1] After this controversy arose, Ms. Burch withdrew her approval.

[2] As the defendants point out, although Mr. Shannon specified in the restriction agreement that houses must meet minimum square footage requirements, and that the attached garages on all but one lot not face the street, he did not identify the type of construction allowed or otherwise define the term "harmonious." For example, the restriction agreement did not indicate the type of building materials to be used, or limit architectural style. To the contrary, the agreement recognized that there would be single-story, two-story, and tri-level structures, and that some garages might accommodate more than two vehicles.

A few days later, the defendants received a letter from the lawyer, who repeated the gist of the earlier conversation and emphasized that the defendants' property was subject to the Lincoln Green restriction agreement. Counsel also stated that the Nottingham Forest association was not authorized to approve the defendants' project. The defendants did not respond.

A group of Lincoln Green homeowners filed suit in Oakland Circuit Court in August 1991 to permanently enjoin the defendants from proceeding with construction. There was a three-day bench trial in June 1992. At the conclusion, the court held that although the defendants' proposed dwelling was not "harmonious" with the existing houses in Lincoln Green, they were entitled to a judgment of no cause of action, nonetheless.

After noting that the defendants' structure was in compliance with code and ordinance requirements, the circuit court explained that neither the plaintiffs nor the other subdivision lot owners constituted the architectural control committee contemplated by the 1967 restriction agreement. Further, the requirement of an "harmonious" development in paragraph 18 of the agreement was vague, ambiguous, and overbroad on its face.

Moreover, the circuit court said, considering that the defendants first presented their plans in 1987, the facts and evidence justified applying the defenses of laches, estoppel, and waiver. The plaintiffs failed to take the proper action under the restriction agreement to protect their interests.

IV

The plaintiffs appealed to the Court of Appeals. In an unpublished opinion per curiam,[3] the Court of Appeals reversed and remanded for further proceedings. Noting that it reviews the findings of fact in an equitable action for clear error, the majority said that there were several problems in this case.

First, although the plaintiffs did not constitute a properly formed architectural control committee, that was irrelevant because each possessed an individual cause of action to enforce the restrictive covenants that ran with the land and were binding on the defendants, the majority said. Also, paragraph 21 of the agreement provided for enforcement of the restrictions by proceedings at law or in equity against any person who violates a covenant.

Second, the majority said the circuit court erred in finding paragraph 18 to be vague, ambiguous, overbroad, and unenforceable. The drafter's intent is paramount to construing a restrictive covenant. That intent may be gleaned from surrounding circumstances, the location and character of the entire tract, the purpose of the restriction, and whether there was a general plan for the development of property. Here, the intent was to "cause the subdivision to develop into a beautifully, harmonious, private residence section . . . ." This was not ambiguous or overbroad, the majority said.

The majority further ruled that it was inconsistent for the circuit court to find both that paragraph 18 was ambiguous and overbroad, and that the defendants' proposed design was not harmonious with the

[3] Issued July 25, 1995 (Docket No. 154645).

neighborhood. The plaintiffs' expert witness testified that the terms "harmony" and "contextualism" are commonly used in the architecture field, and that no reasonable architect would consider the defendants' design to be harmonious with the existing houses in Lincoln Green.

Finally, the circuit court erred in finding that the defendants had submitted plans to the Village of Beverly Hills in 1987, the majority said. It is undisputed that the first plans were not presented until May 1991. Thus, the equitable defenses of laches, estoppel, and waiver did not apply. Neither were the plaintiffs required to show any lost benefit or actual damage. Equity will intercede whenever a violation of a covenant is threatened. Proof of damage is not required.

Acknowledging that a remedy at this late date presented a problem, the majority nonetheless reversed and remanded for proceedings consistent with its opinion. The majority also reversed the circuit court order assessing costs against the plaintiffs, and said that the plaintiffs may tax costs following proceedings on remand.

The dissenting judge in the Court of Appeals agreed with the majority that paragraph 18 was not vague, ambiguous, or overbroad. The dissent also agreed that the circuit court had erred in finding that the defendants' plans were submitted in 1987.

The dissent disagreed, however, that the circuit court had erred in ruling that the plaintiffs failed to take proper action under the restriction agreement. The procedure in the agreement for transferring the developer's rights as developer and architectural control committee had not been followed, and no official homeowners' association had ever been formed. Nor

did the homeowners constitute the committee as the developer's "successors and assigns" under paragraphs 1 and 24. While the plaintiffs may have individual causes of action to enforce the provisions of the restriction agreement, the question remains whether there was a breach. The dissent concluded that there was not, because there was no properly constituted committee to which the defendants were obligated to submit their construction plans.

Finally, the dissent said that it would remand the laches issue for reconsideration because it was not clear that the circuit court would have found no laches in the absence of its erroneous finding that plans were submitted in 1987.

The defendants want this Court to reverse the decision of the Court of Appeals majority and to reinstate the decision of the circuit court. For the reasons stated in the Court of Appeals dissent, and more fully explained below, we grant the requested relief.

V

Negative covenants such as those in the Lincoln Green restriction agreement are grounded in contract. In an action to enforce such a covenant, the intent of the drafter controls. The provisions are to be strictly construed against the would-be enforcer, however, and doubts resolved in favor of the free use of property. *Livonia v Dep't of Social Services*, 423 Mich 466, 525; 378 NW2d 402 (1985). Courts will not grant equitable relief unless there is an obvious violation. *Sampson v Kaufman*, 345 Mich 48, 50; 75 NW2d 64 (1956).

The plaintiffs contend that the defendants breached the Lincoln Green restriction agreement by (1) failing

to obtain written approval of their building plans from the architectural control committee, and (2) building a house that was not architecturally harmonious with existing structures. We agree with the Court of Appeals dissent, however, that there was no breach of the agreement because there was no properly constituted architectural control committee, i.e., no method for enforcing the standards of "beauty" and "harmony."

It is undisputed that from the time the restriction agreement was recorded in 1967, to the beginning of the construction of the defendants' home in 1991, no architectural control committee separate from the original developer had been convened to consider proposed construction in Lincoln Green. All twelve lots had been improved by 1974. After that, builders who were involved in projects on Long Bow Court either were referred by Mr. Smith to the Nottingham Forest association or, presumably, proceeded without the approval of a homeowners' group.

Further, no one sought to correct the statement on the annual village calendar that the Nottingham Forest association had jurisdiction over the property on Long Bow Court. The calendar had contained that information for at least fifteen years, according to Mr. Smith. In short, as noted by the Court of Appeals dissent, Lincoln Green lot owners acted at all times as if there were no separate architectural control committee for their subdivision.

Moreover, although the defendants did not submit proposed design plans for their home until 1991, the plaintiffs were aware several years earlier of the need for an architectural control committee. Probable construction of a new house on Long Bow Court became

a reality in 1987, when the owners of the neighboring condominium project agreed to split off land for development as a single-family parcel, subject to the Lincoln Green restriction agreement. The record indicates that several residents of Long Bow Court attended one or more of the public hearings on the matter, and that the developer announced then that he had a buyer who had designed a house for the site.[4]

The plaintiffs emphasize that the defendants were aware the parcel they purchased in 1988 was subject to the restriction agreement governing the twelve lots in Lincoln Green. That is not disputed. This is not an instance, however, where a purchaser of land subject to restrictive covenants either disregards them or flouts them. The defendants sought both through the Village of Beverly Hills and the Oakland County Register of Deeds to locate the committee or association authorized to approve a proposed structure. They were informed by a village official that they should seek approval from the Nottingham Forest association, and were referred to Ms. Burch. Both she and

---

[4] The trial court admitted as defense exhibits copies of the official minutes of several public hearings held in 1987. The defendants attached a couple of these exhibits to their brief in the Court of Appeals. One, identified as the minutes of the regular council meeting of January 5, 1987, indicates that members were informed that a buyer was interested in purchasing the site now owned by the defendants for the purpose of building a custom home. Another document, identified as the council minutes of October 5, 1987, states that the developer "has found a purchaser for the property who is an architect and who has designed a home for that lot. When he designed the home, he did it with the intent of saving as many of the trees as possible."

the village official gave the go-ahead, and the defendants' plans proceeded.[5]

Although the Court of Appeals correctly concluded that the committee contemplated by the 1967 restriction agreement never was properly constituted, the majority erred in finding that to be irrelevant because the plaintiffs had individual causes of action to enforce the restrictive covenants. As the dissent recognized, the critical question was whether there was a breach of the agreement. Where the defendants complied with all government regulations and objective criteria under the agreement, and the entity charged with determining compliance with other standards did not exist, there was no violation to redress, on an individual basis or otherwise.

VI

For the reasons given, we reverse the judgment of the Court of Appeals and reinstate the judgment of the circuit court. MCR 7.201(F)(1).

MALLETT, C.J., and BRICKLEY, CAVANAGH, RILEY, and WEAVER, JJ., concurred.

BOYLE, J., concurred only in the result.

KELLY, J., took no part in the decision of this case.

---

[5] The defendants also determined that such a subdivision or homeowners' association was not registered with the Michigan Department of Commerce.