*Court Of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*



★ ★ ★ ★ ★ ★

# MEMORANDUM OPINION

No. 04-08-00290-CV

Larry **EDBERG** and Julie Edberg,
Appellants

v.

**THE LAUREL CANYON RANCH ARCHITECTURAL REVIEW COMMITTEE**,
Ralph Rosales, J.A. Foster, Dale Bauer, and Peter Serebrenik,
Appellees

From the 38th Judicial District Court, Medina County, Texas
Trial Court No. 07-02-18317-CV
Honorable Mickey R. Pennington, Judge Presiding

Opinion by:    Karen Angelini, Justice

Sitting:    Karen Angelini, Justice
            Sandee Bryan Marion, Justice
            Rebecca Simmons, Justice

Delivered and Filed:   April 22, 2009

REVERSED AND REMANDED

This case involves a dispute between Larry and Julie Edberg, who purchased property in Laurel Canyon Ranch Unit 2, and the Laurel Canyon Ranch Architectural Review Committee. We reverse and remand.

## BACKGROUND

After being informed by the Laurel Canyon Ranch Architectural Review Committee ("the ARC") that their home, which was in the process of being constructed, violated the terms of the Declaration of Covenants, Conditions, and Restrictions for Laurel Canyon Ranch Unit 2 ("the Declaration"), the Edbergs sued the ARC and the individual members of the ARC. In response, the ARC and the individual members of the ARC filed motions for summary judgment, which the trial court granted. The Edbergs appeal from the summary judgment.

## ARCHITECTURAL REVIEW COMMITTEE

In their first issue, the Edbergs argue that the trial court erred in finding that the ARC was legally constituted. Specifically, the Edbergs argue that the ARC does not qualify as an unincorporated non-profit association under Texas law. Further, they argue that even if the ARC qualifies as an unincorporated non-profit association, the trial court erred in finding that it was properly constituted because "the names of its members and addresses at which they could be contacted were not included in the dedicatory instrument or any other document filed of public record."

An unincorporated nonprofit association is "an unincorporated organization, other than one created by a trust, consisting of three or more members joined by mutual consent for a common, nonprofit purpose." TEX. REV. CIV. STAT. ANN. art. 1396-70.01, § 2(2) (Vernon Supp. 2008). The Edbergs argue that the ARC does not fall within this definition because the Declaration provides that (1) the ARC could function with only one member, and (2) the members serve at the pleasure of the Declarant.

The Declaration provides for the creation of the ARC:

All lots and improvements within the Community shall be subject to the jurisdiction of an Architectural Review Committee. The Architectural Review Committee shall be composed of one or more individuals appointed by the Declarant [Laurel C Ranch LP]. However, when Declarant assigns jurisdiction over to the Architectural Review Committee to the Association, as described below, the Architectural Review Committee shall be comprised of no fewer than three individuals. The terms of the individual's service on the Architectural Review Committee shall be for one year; however, individuals shall serve from the date of appointment until replaced. During the period of the Declarant's jurisdiction, the Architectural Review Committee members shall serve at the pleasure of the Declarant. Thereafter, Architectural Review Committee members shall serve at the pleasure of the Board of Directors of the Association.

According to the Edbergs, because this language provides for the possibility that the ARC could be comprised of only one member, the ARC was not legally constituted. However, the summary judgment evidence showed that the ARC is comprised of more than three members.

The Edbergs also argue that because the Declaration states that the members serve at the pleasure of the Declarant, and later the home owners' association, the requirement of "mutual assent" was not met. We disagree. The law requires that the members be "*joined by mutual consent* for a common, nonprofit purpose." TEX. REV. CIV. STAT. ANN. art. 1396-70.01, § 2(2) (Vernon Supp. 2008) (emphasis added). Here, the summary judgment evidence showed that the members were joined by mutual consent for a common, nonprofit purpose. The members of the ARC were approached by an agent of the Declarant and asked if they would agree to serve on the ARC for the purpose of enforcing the property restrictions set forth in the Declaration. Each of these members agreed. Thus, the mutual assent requirement was met.

We further note that the undisputed evidence showed that the ARC is unincorporated and it has no revenues, has not made a profit, and does not compensate its members.

The Edbergs also claim that the ARC does not operate like an unincorporated nonprofit association because it does not keep minutes of meetings. However, nowhere does the statute require that an unincorporated nonprofit association keep minutes. Instead, the statute requires books and records *of account* to be maintained:

> (a)     A nonprofit association shall keep correct and complete books and records *of account* for at least three years after the end of each fiscal year and shall make them available to the members of the association for inspection and copying upon request.

> (b)     The attorney general may inspect, examine, and make copies of the books, records, and other documents the attorney general deems necessary and investigate the association to determine if a violation of any law of this state has occurred.

TEX. REV. CIV. STAT. ANN. art. 1396-70.01, § 11 (Vernon Supp. 2008) (emphasis added). Requiring an association to keep books and records of account relates to an association showing that its purpose is nonprofit. However, the statute has no requirement that the association maintain minutes of meetings.

Alternatively, the Edbergs claim that even if the trial court did not err in finding that the ARC was an unincorporated nonprofit association, the trial court still erred in finding that the ARC was properly constituted because the names of its members and addresses were not included in the dedicatory instrument. The Edbergs cite no Texas law in support of their assertion. Instead, they rely on opinions from other states: *Hartstene Pointe Maint. Ass'n v. Diehl*, 979 P.2d 854 (Wash. Ct. App. 1999), and *Stuart v. Chawney*, 560 N.W.2d 336 (Mich. 1997). Both cases, however, are distinguishable. And, neither stand for the principle that for an architectural committee to be properly constituted, it must give the names and address of its members in its dedicatory instrument.

In *Hartstene*, 979 P.2d at 855-56, a Washington appeals court held that the architectural control committee was not properly constituted because (1) it was not comprised of at least two members of the board of directors in compliance with a Washington statute; and (2) it was not comprised of three members in compliance with the covenants, conditions, and restrictions that governed the neighborhood. Here, however, the Edbergs have not pointed to anything in either the Declaration or a Texas statute that requires the names and/or addresses of an architectural committee's members to be contained in the dedicatory instrument. Thus, unlike in *Hartstene*, the ARC is not in violation of the Declaration or a Texas statute.

In *Stuart*, 560 N.W.2d at 340, it was "undisputed that from the time the restriction agreement was recorded in 1967, to the beginning of the construction of the defendants' home in 1991, no architectural control committee separate from the original developer had been convened to consider proposed construction." Here, however, the ARC was properly constituted.

Further, we note that the Declaration contemplated the creation of an architectural review committee. It would be impossible to state in the Declaration the members' names and addresses when the committee has not yet been formed.

We, therefore, decline to impose such a requirement.

### DECLARATION OF COVENANTS, CONDITIONS, AND RESTRICTIONS

We review a trial court's interpretation of a restrictive covenant de novo in accordance with general rules of contract construction. *Buckner v. Lakes of Somerset Homeowners Ass'n, Inc.*, 133 S.W.3d 294, 297 (Tex. App.—Fort Worth 2004, pet. denied). In construing a restrictive covenant, a court's primary task is to determine the intent of the framers of the restrictive covenant. *Wilmoth v. Wilcox*, 734 S.W.2d 656, 658 (Tex. 1987). In determining this intent, the court must liberally

construe the covenant's language and must ensure that every provision is given effect. *See* TEX.

PROP. CODE ANN. § 202.003(a) (Vernon 2007); *Munson v. Milton*, 948 S.W.2d 813, 816 (Tex.

App.—San Antonio 1997, pet. denied). Words used in a restrictive covenant may not be enlarged,

extended, stretched, or changed by construction, but will be given their commonly accepted

meanings. *Buckner*, 133 S.W.3d at 297.

The Edbergs argue that the trial court erred in granting summary judgment because the

Declaration does not, by its express language, impose any covenants or restrictions on their property.

The Edbergs emphasize that the plain language of the Declaration imposes the covenants and

restrictions on Unit 1, and does not impose any such restrictions or covenants on Unit 2, where their

property is located:

> Declarant [Laurel C Ranch LP] now desires, for its own best interest and for the interest of other persons who may purchase property within the confines of the Laurel Canyon Ranch, *Unit 1*, that there be established and maintained a uniform plan for improvement and development as a residential subdivision.
>
> NOW, THEREFORE, Declarant hereby declares, adopts, establishes, and *imposes upon the Laurel Canyon Ranch, Unit 1*, the following reservations, easements, restrictions, covenants, and conditions, applicable thereto, all of which are for the purpose of enhancing the value, desirability, and attractiveness of all of the properties in the Laurel Canyon Ranch, *Unit 2*. These easements, covenants, restrictions, and conditions shall run with the title to said real property and shall be binding upon all parties having or acquiring any right or title, or interest in any lot or lots in the Laurel Canyon Ranch, *Unit 2*, or any part thereof, and their respective heirs, successors, and assigns, and shall inure to the benefit of each Owner and holder thereof. Declarant also declares that, upon its creation and transfer of authority by Declarant to the Property Owners Association, as provided for hereinafter, all of the lots in Laurel Canyon Ranch, *Unit 2*, shall be subject to the jurisdiction of the Property Owner's Association for the Laurel Canyon Ranch as provided for herein.

(emphasis added).

Indeed, the plain language of the Declaration imposes only upon Unit 1 "the following

reservations, easements, restrictions, covenants, and conditions," which it states is for the purpose

of "enhancing the value, desirability, and attractiveness of all of the properties in the Laurel Canyon Ranch, Unit 2." Logically, covenants and restrictions imposed on Unit 1 could enhance the value of properties in Unit 2. In response, the ARC argues that the Declaration did "unequivocally" burden Unit 2 and points to the following language:

> These easements, covenants, restrictions, and conditions shall run with the title to said real property and shall be binding upon all parties having or acquiring any right or title, or interest in any lot or lots in the Laurel Canyon Ranch, Unit 2, or any part thereof, and their respective heirs, successors, and assigns, and shall inure to the benefit of each Owner and holder thereof.

This language, however, does not burden or impose any covenants or restrictions upon Unit 2. All it does is state that "these" easements, covenants, restrictions, and conditions (i.e. the ones that were previously imposed on Unit 1) run with the title to those lots in Unit 2.

We note that neither party has argued that the references in the Declaration to Unit 1 were typographical errors. *See Doe v. Tex. Ass'n of Sch. Bds., Inc.*, No. 02-08-00266-CV, 2009 WL 579248, at *6 (Tex. App.—Fort Worth Mar. 5, 2009, no pet. h.) (holding that the agreement was not ambiguous because the singular term "incident" was nothing more than a typographical error); *Ussery Invs. v. Canon & Carpenter, Inc.*, 663 S.W.2d 591, 593 (Tex. App.—Houston [1st Dist.] 1983, writ dism'd) ("Obviously, this typographical mistake must yield to the well-established doctrine that written contracts will be construed according to the intention of the parties, notwithstanding errors and omissions, by perusing the entire document and to this end, words, names, and phrases obviously intended may be supplied."). Given that "Unit 1" appears twice in the relevant portion of the Declaration, we cannot say that the references to "Unit 1" were typographical errors as a matter of law *on this record*. *See Ussery Invs.*, 663 S.W.2d at 593 (explaining that provision in restrictive covenant that provided restrictions, covenants, and limitations to expire on

January 1, 1955, was typographical mistake as "the document in which they were filed stated that they were to expire seventeen years before they were even filed").

Therefore, because the ARC did not prove as a matter of law that the Declarations imposed any covenants or restrictions on the Edbergs' property, we reverse the summary judgment and remand for further proceedings.[1]

## CROSS-ISSUE

In a cross-issue, the ARC argues that the trial court erred in denying its attorneys' fees relating to the filing of the motion for summary judgment. However, as the motion for summary judgment should not have been granted, we find no error on the part of the trial court in failing to award attorneys' fees to the ARC.

Karen Angelini, Justice

---

[1] Having held that the summary judgment should be reversed, we need not reach the Edbergs' other issue.