*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

GLORYCREST CARPENTER ROAD, INC.,

    Plaintiff-Appellee,

v

ADAMS OUTDOOR ADVERTISING LIMITED
PARTNERSHIP,

    Defendant-Appellant.

FOR PUBLICATION
October 02, 2024
9:06 AM

No. 366261
Washtenaw Circuit Court
LC No. 22-001244-CB

Before: PATEL, P.J., and YATES and SHAPIRO,[*] JJ.

PATEL, P.J.

In this dispute over the validity of a real property lease agreement for a highway billboard, defendant, Adams Outdoor Advertising Limited Partnership, appeals by right the trial court's order granting summary disposition in favor of plaintiff, Glorycrest Carpenter Road, Inc. under MCR 2.116(C)(10) and declaring the lease cancelled. We affirm.

## I. BACKGROUND

In October 1927, a group of landowners conveyed a Release of Right of Way to the state of Michigan. The release granted the state the right to use a 50-foot strip of land along U.S. 23. The release also included a restrictive covenant:

> The Grantor covenants and agrees for himself, his heirs, executors, administrators, successors and assigns that no bill board, sign board or advertising sign other than those advertising articles sold on the premises shall be erected, permitted or maintained in or upon the remaining lands and premises now owned by the grantor immediately adjoining the lands herein conveyed, within a distance of three hundred feet, measured at right angles from the boundary of the lands

---

[*] Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

conveyed. This covenant is hereby declared to be a perpetual covenant and shall be construed as a real covenant attached to and running with the land.

A notary witnessed the release, and the release was duly recorded.

In August 2011, Almer Harris,[1] who was apparently a successor to one or more of the landowners who executed the release, entered into a lease agreement with Adams Outdoor. Almer agreed to lease a portion of 4701 Carpenter Road to Adams Outdoor to erect "outdoor advertising structures." The parties agreed that the lease would commence on June 12, 2012, and would last for 10 years. They further agreed that the lease would automatically renew for a "like term" and would then renew for successive terms unless one of the parties gave notice that the party was terminating the lease. Adams Outdoor agreed to pay $980 annually for the lease.

In November 2017, Almer's lawyer sent a letter to Adams Outdoor. He noted that Almer had signed an agreement to sell the real property covered by the lease and that the lease gave Adams Outdoor a right of first refusal to purchase the property on the same terms. The lawyer wrote that, "[i]n the event that you do not purchase the property, please consider this letter as notice that Mr. Harris will be cancelling this lease at the earliest possible date, and will not be renewing its term."

Glorycrest purchased 4701 Carpenter Road from Almer in February 2019. Glorycrest indicated that the property was vacant, but that it planned to develop condominiums on the property.

In June 2021, Glorycrest's lawyer sent a letter to Adams Outdoor. He wrote that Glorycrest was in receipt of a check for $980 from Adams Outdoor for the lease term from June 2021 through May 2022. Glorycrest's lawyer reminded Adams Outdoor that Almer's lawyer had sent notice in November 2017 that the lease was being cancelled. He asserted that the lease would, for that reason, end on June 11, 2022. He asked Adams Outdoor to make arrangements to remove the sign and backfill the holes on or before June 11, 2022.

Adams Outdoor's lawyer sent a written response to Glorycrest in July 2021. He stated that according to the plain terms of the lease, it would automatically renew for 10 years on June 12, 2022. Accordingly, he wrote, the lease would remain in "full force and effect until June 11, 2032." He asked Glorycrest to "be guided accordingly." Glorycrest's lawyer wrote back and stated that he "strongly disagreed with your assertion [that] the lease runs through June 11, 2032." He further stated that, if Adams Outdoor wished to avoid litigation, then it would "vacate in a safe and orderly manner by June 11, 2022."

In September 2022, Glorycrest sued Adams Outdoor for declaratory relief. Glorycrest alleged that the property was currently vacant and thus the billboard rented out by Adams Outdoor violated the terms of the restrictive covenant in the Release of Right of Way because it advertised articles that were not sold on the property and it was within the area covered by the restrictive

---

[1] Because the Release of Right of Way includes landowners with the last name Harris, we will refer to these persons by their first names.

covenant. Glorycrest further alleged that once the condominium development was complete, Adams Outdoor would be unable to lease the billboard to advertisers without violating the restrictive covenant. Glorycrest maintained that Almer and Adams Outdoor executed the lease under a mutual mistaken belief that Adams Outdoor could advertise articles other than those sold on the property. Glorycrest requested the trial court to declare the parties' rights and cancel or rescind the lease.

In lieu of an answer, Adams Outdoor moved for summary disposition under MCR 2.116(C)(7) and (8) arguing that Glorycrest did not have standing to assert the covenant in the Release of Right of Way, the claim was barred by the statute of frauds, and the claim was barred under the applicable period of limitations or the doctrine of laches. Glorycrest maintained that it had standing to seek a declaration that the parties were mutually mistaken about the landowner's authority to enter into the lease, the Release of Right of Way met all the requirements of the statute of frauds, the claim was timely filed, and Adams Outdoors could not establish the necessary prejudice to invoke the doctrine of laches. The trial court denied the motion.[2]

After discovery closed, Glorycrest moved for summary disposition under MCR 2.116(C)(10) asserting that there was no genuine issue of material fact that the current billboard violated the restrictive covenant and Adams Outdoor would be unable to lease the billboard to any advertisers without violating the covenant. Glorycrest requested the trial court to declare the parties' rights and cancel the lease. In response, Adams Outdoor argued that Glorycrest had not established that there were no questions of fact applicable to its claim for declaratory relief. Additionally, Adams Outdoor stated that it was entitled to summary disposition in its favor under MCR 2.116(I)(2) because Glorycrest lacked standing, the claim was barred by the statute of frauds, and the applicable limitations period had expired.

After hearing the arguments, the trial court determined that the billboard violated the restrictive covenant as a matter of law, and granted Glorycrest's motion. In its written order, the court declared the lease agreement "cancelled and/or otherwise rescinded as a matter of law . . . ." This appeal followed.

## II. STANDARDS OF REVIEW

Adams Outdoor argues that the trial court erred by granting summary disposition to Glorycrest under MCR 2.116(C)(10), by denying its motion for summary disposition under MCR 2.116(C)(7) and (8), and by denying summary disposition in its favor under MCR 2.116(I)(2). "We review de novo a trial court's decision on a motion for summary disposition." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019).

---

[2] Adams Outdoor applied for leave to appeal the trial court's order, which this Court denied. See *Glorycrest Carpenter Rd, Inc v Adams Outdoor Advertising Ltd*, unpublished order of the Court of Appeals, entered June 27, 2023 (Docket No. 364369).

Whether a statute of limitations bars a claim is a question of law that this Court reviews de novo when the underlying facts are not disputed. *O'Leary v O'Leary*, 321 Mich App 647, 651; 909 NW2d 518 (2017). As this Court has explained:

> When reviewing a motion under MCR 2.116(C)(7), this Court must accept all well-pleaded factual allegations as true and construe them in favor of the plaintiff, unless other evidence contradicts them. If any affidavits, depositions, admissions, or other documentary evidence are submitted, the court must consider them to determine whether there is a genuine issue of material fact. If no facts are in dispute, and if reasonable minds could not differ regarding the legal effect of those facts, the question whether the claim is barred is an issue of law for the court. However, if a question of fact exists to the extent that factual development could provide a basis for recovery, dismissal is inappropriate. [*Dextrom v Wexford Co*, 287 Mich App 406, 428-429; 789 NW2d 211 (2010) (citations omitted).]

"A motion under MCR 2.116(C)(8) tests the legal sufficiency of a claim based on the factual allegations in the complaint." *El-Khalil*, 504 Mich at 159 (emphasis omitted). A court must accept all factual allegations as true and review the matter on the pleadings alone. *Id*. at 160. The grant of a motion under MCR 2.116(C)(8) is only appropriate "when a claim is so clearly unenforceable that no factual development could possibly justify recovery." *Id*.

Summary disposition under MCR 2.116(C)(10) is warranted when "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." MCR 2.116(C)(10). When reviewing a motion for summary disposition under MCR 2.116(C)(10), we must consider the evidence submitted by the parties in the light most favorable to the nonmoving party. *El-Khalil*, 504 Mich at 160. "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Id*. (cleaned up). Summary disposition under MCR 2.116(C)(10) is proper when, after considering all evidence in the light most favorable to the nonmoving party, the court determines there is no genuine issue of material fact. *Id*.

But, "[i]f it appears to the court that the opposing party, rather than the moving party, is entitled to judgment, the court may render judgment in favor of the opposing party." MCR 2.116(I)(2).

We review de novo the proper interpretation and application of statutes and court rules, *Franks v Franks*, 330 Mich App 69, 86; 944 NW2d 388 (2019); the proper construction of contracts, *Pransky v Falcon Group, Inc*, 311 Mich App 164, 173; 874 NW2d 367 (2015); the proper construction of real estate instruments and whether the trial court properly applied this state's common law, *Conlin v Upton*, 313 Mich App 243, 254; 881 NW2d 511 (2015); whether a party has standing to bring a claim, *MCNA Ins Co v Dep't of Technology, Mgt and Budget*, 326 Mich App 740, 743; 929 NW2d 817 (2019); and whether a party is the real party in interest, *In re Beatrice Rottenberg Living Trust*, 300 Mich App 339, 354; 833 NW2d 384 (2013).

## III. STANDING

We first address Adams Outdoor's argument that Glorycrest lacked standing to assert its claim and Adams Outdoor's related argument that Glorycrest's claim for declaratory relief did not amount to a proper cause of action.[3] We disagree.

Standing refers to a party's right initially to invoke a trial court's power to adjudicate a claimed injury in fact. *Saugatuck Dunes Coastal Alliance v Saugatuck Twp*, 509 Mich 561, 592; 983 NW2d 798 (2022). Our Supreme Court has stated that Michigan's standing doctrine is a prudential doctrine that recognizes that a litigant has standing whenever he or she has a valid cause of action:

> [A] litigant has standing whenever there is a legal cause of action. Further, whenever a litigant meets the requirements of MCR 2.605, it is sufficient to establish standing to seek a declaratory judgment. Where a cause of action is not provided at law, then a court should, in its discretion, determine whether a litigant has standing. A litigant may have standing in this context if the litigant has a special injury or right, or substantial interest, that will be detrimentally affected in a manner different from the citizenry at large or if the statutory scheme implies that the Legislature intended to confer standing on the litigant. [*Lansing Sch Ed Ass'n v Lansing Bd of Ed*, 487 Mich 349, 372; 792 NW2d 686 (2010).]

Relying on the decision in *Lansing Sch Ed Ass'n*, this Court has noted that a party will have standing under the common law if the party can show any of the following: the party has a recognized cause of action, the party has met the requirements of MCR 2.605 for declaratory relief, the party has a special injury or right, or the party has a substantial interest that will be detrimentally affected in a manner different than the citizenry at large. See *Mich Republican Party v Donahue*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 364048); slip op at 4-5. MCR 2.605(A)(1) provides that "[i]n a case of actual controversy within its jurisdiction, a Michigan court of record may declare the rights and other legal relations of an interested party seeking a declaratory judgment, whether or not other relief is or could be sought or granted." "An actual controversy exists when declaratory relief is needed to guide a plaintiff's future conduct in order to preserve the plaintiff's legal rights." *Lansing Sch Ed Ass'n v Lansing Bd of Ed (On Remand)*, 293 Mich App 506, 515; 810 NW2d 95 (2011).

In its complaint, Glorycrest alleged that it was the successor in interest to two relevant instruments: (1) the lease agreement with Adams Outdoor, and (2) a Release of Right of Way that granted an easement to the state for highway purposes and included a restrictive covenant purportedly affecting Glorycrest's property. Glorycrest asked the trial court to review the

---

[3] We acknowledge that Adams Outdoor did not raise this second argument in the trial court and thus is it not preserved. Although we have no obligation to address the argument, we exercise our discretion to address it because "the issue involves a question of law and the facts necessary for its resolution have been presented." See *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 359090); slip op at 3.

controlling documents and declare its rights and obligations under the lease. Glorycrest alleged that the parties to the lease executed it under a mutual mistaken belief that Adams Outdoor could advertise articles other than those sold on the property, and it asked the court to rescind or cancel the lease. Although Glorycrest's claim involved the interpretation and application of the restrictive covenant, its request for declaratory relief addressed the continuing validity and application of the lease as to the parties.

Relying on this Court's recent decision in *Mercurio v Huntington Nat'l Bank*, ___ Mich App ___; ___ NW3d ___, issued August 3, 2023 (Docket No. 361855); slip op at 7 n 8, Adams Outdoor asserts Glorycrest has not asserted a valid cause of action because it simply requested declaratory relief, which is a remedy, and Glorycrest does not have standing to pursue the remedy. Adams Outdoor's reliance on *Mercurio* as controlling authority for its standing claim is misplaced.

In *Mercurio*, the plaintiff alleged that her investment in a catering business and her personal guarantee of the business's bank loans were fraudulently obtained. *Id*. at __; slip op at 2. The plaintiff asserted claims for fraud, civil conspiracy, respondeat superior, and violation of the Michigan Limited Liability Company Act, MCL 450.4101 *et seq*. *Id*. at __; slip op at 3-4. In addition, the plaintiff requested that the trial court declare that her personal guaranty was unenforceable (Count I) and that the bank and its vice president owed and breached a legal duty to her under 13 CFR 120.140(f) (Count IV). *Id*. at __; slip op at 3-4. The trial court held that the plaintiff failed to state a claim for either count for declaratory relief, concluding that there was no "actual controversy" to invoke a claim for declaratory relief under MCR 2.605 because her injuries had already occurred and thus she did not need guidance relative to future conduct. *Id*. at __; slip op at 4. This Court believed that an actual controversy existed regarding the enforceability of the guaranty for purposes of declaratory relief under MCR 2.605. *Id*. at __; slip op at 6. But this Court affirmed the trial court's dismissal of Count I under MCR 2.116(C)(8) on alternate grounds because it concluded there was adequate consideration, the guaranty was not unconscionable, and thus "plaintiff failed to state a 'claim' for declaratory relief in relation to the allegations of unconscionability and lack of consideration." *Id*. at __; slip op at 6-7. This Court also affirmed the trial court's dismissal of Count IV on the basis that no actual controversy existed because even if the Court declared that a duty existed, there would be no guidance with respect to future conduct and any breach of the duty would concern past conduct. *Id*. at __; slip op at 7.

In this case, Glorycrest has a concrete and distinct interest in the proper interpretation and application of both governing instruments as a successor party to the lease and a successor in interest of property affected by a restrictive covenant. Additionally, Glorycrest identified an "actual controversy" involving the controlling instruments that required a court to "declare the rights and other legal relations" of the parties affected by the governing instruments and necessitating guidance as to future conduct. MCR 2.605(A)(1); *Lansing Sch Ass'n (On Remand)*, 293 Mich App at 515. Accordingly, Glorycrest has standing to assert its request for declaratory relief. See *Lansing Sch Ed Ass'n*, 487 Mich at 372.

In addition to Glorycrest's request for declaratory relief, a fair reading of the complaint shows that it alleged a valid cause of action. Glorycrest asserted that the parties executed the lease under the influence of a mutual mistake and thus it asked the court to cancel or rescind the agreement. It is well settled that courts determine the nature of an action by reading the complaint as a whole to determine the gravamen of the claim; courts are not governed by the labels chosen

by the parties. See *Adams v Adams*, 276 Mich App 704, 710-711; 742 NW2d 399 (2007). Although Glorycrest labeled its claim as one for declaratory relief, it alleged that the lease was unenforceable because of mutual mistake and should be rescinded. A court sitting in equity has the power to reform or rescind an agreement because of fraud, mistake, accident, or surprise. See *Johnson Family Ltd Partnership v White Pine Wireless, LLC*, 281 Mich App 364, 371-373; 761 NW2d 353 (2008). Glorycrest alleged a cause of action that combined an action for reformation or rescission with a request for declaratory relief. The trial court had jurisdiction to declare the rights and obligations of the parties under the lease regardless of the label Glorycrest chose. See MCR 2.605(A)(2).

Adams Outdoor also argues at length that Glorycrest was not the real party in interest because the Release of Right of Way granted the restrictive covenant to the state. "[T]he real-party-in-interest rule is essentially a prudential limitation on a litigant's ability to raise the legal rights of another." *In re Beatrice Rottenberg Living Trust*, 300 Mich at 355. The real party in interest is the one "who is vested with the right of action on a given claim, although the beneficial interest may be in another." *Id*. at 356. The rule requires that a particular claim be prosecuted by the party who, under the substantive law, owns the claim. *Id*. The purpose of the rule is to ensure sincere and vigorous advocacy. *Lansing Sch Ed Ass'n*, 487 Mich at 355. The focus is on whether the litigant is a proper party to request adjudication and not whether the issue is itself justiciable. *Id*.

Glorycrest did not seek to enforce the state's rights against a third-party property owner. Rather, it sought to understand its obligations to Adams Outdoor under the lease considering its obligations to the state under the restrictive covenant. To the extent that the restrictive covenant and lease conflicted, Glorycrest was a real party in interest because it was required to comply with both instruments. See *In re Beatrice Rottenberg Living Trust*, 300 Mich App at 355-356.

## IV. STATUTE OF FRAUDS

Adams Outdoor further argues that the trial court erred by granting summary disposition in favor of Glorycrest because the Release of Right of Way violated the statute of frauds. We disagree.

A transfer of an interest in land "*may* be made by deed, signed and sealed by the person from whom the estate or interest is intended to pass, being of lawful age, or by his lawful agent or attorney, and acknowledged or proved and recorded as directed in this chapter, without any other act or ceremony whatever." MCL 565.1 (emphasis added). See also MCL 565.8 (stating the requirements for executing a deed). But certain instruments must be in writing and signed by the party creating the interest:

> No estate or interest in lands, other than leases for a term not exceeding 1 year, nor any trust or power over or concerning lands, or in any manner relating thereto, shall hereafter be created, granted, assigned, surrendered or declared, unless by act or operation of law, or by a deed or conveyance in writing, subscribed by the party creating, granting, assigning, surrendering or declaring the same, or by some person thereunto by him lawfully authorized by writing. [MCL 566.106.]

The Legislature enacted the statutes of fraud to prevent fraud or the opportunity for fraud; the statues were not, however, enacted as an instrumentality to be used in aid of fraud or as a stumbling block in the path of justice. *Kent v Bell*, 374 Mich 646, 654; 132 NW2d 601 (1965). The rule does not amount to a strict rule that nothing may be presented in parol. Indeed, a memorandum or note may be sufficient to establish the terms of the conveyance. See *Jim-Bob, Inc v Mehling*, 178 Mich App 71, 83-84; 443 NW2d 451 (1989).

In this case, Glorycrest submitted a copy of a Release of Right of Way that it alleged was executed by its predecessor in interest. The Release of Right of Way conveyed a "strip of land fifty feet in width lying east of and adjacent to the center line of U.S. Number 23 as now surveyed over and across the west half of the southwest quarter of section thirteen, T3S, R6E, Pittsfield, township, Washtenaw county, Michigan." The Release of Right of Way also included a restrictive covenant. There can be no reasonable dispute that the copy of the Release of Right of Way was a sufficient memorandum of the conveyance to meet the statute of frauds. Indeed, Adams Outdoor does not dispute that the Release of Right of Way was a sufficient memorandum; rather, it argues that the Release of Right of Way did not include valid signatures by the grantors because the grantors' names were typed on the Release of Right of Way.

A typewritten name can satisfy the statute of frauds if there is evidence that the person typing his or her name intended to authenticate the typing. See *Clark v Coats & Suits Unlimited*, 135 Mich App 87, 97; 352 NW2d 349 (1984); see also Restatement Contracts, 2d, § 134 ("The signature to a memorandum may be any symbol made or adopted with an intention, actual or apparent, to authenticate the writing as that of the signer."). On the record before the trial court in this case, there was evidence that the grantors authenticated the typewritten signatures on the Release of Right of Way. Two witnesses signed the Release of Right of Way in their own hand and attested that the grantors executed the Release of Right of Way in their presence. Additionally, one of the witnesses, Melvin E. Fish, notarized the document. Fish related that the grantors appeared before him on October 27, 1927, and executed the Release of Right of Way. Fish also identified A. N. Harris as Adalbert N. Harris in his notation. Fish's handwritten signature as a witness with his typewritten signature as the notary, along with the other witness's signature, established that the Release of Right of Way was properly signed and notarized consistent with MCL 565.8. The Release of Right of Way meets the requirements of the statute of frauds on its face. Because Adams Outdoor presented no evidence to contradict the evidence that the grantors authenticated their typewritten names, the trial court did not err by concluding that there was no question of fact that the signatures were authenticated. See *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 369-370; 775 NW2d 618 (2009) (stating that, once the moving party presents evidence to establish a particular element as a matter of law, the nonmoving party had the burden to establish a question of fact as to that element).

Adams Outdoor argues that *Clark* applies only to contracts and does not apply to real estate transfers. But Adams Outdoor does not offer any meaningful basis for distinguishing between ordinary contracts and contracts to convey interests in land. As the United States Court of Appeals for the Sixth Circuit explained in the context of a similar claim involving the statute of frauds applicable to financial institutions, there is no basis for treating the signature requirements from one statute of frauds any differently than another:

Additionally, insisting on a personal signature would depart markedly from the long history of the statute of frauds under which a signature could include any notation signifying adoption or assent to being bound. Traditionally, any symbol executed or adopted by a party with the present intent to authenticate a writing may serve as a signature. While the statute of frauds for financial institutions was meant to broaden the kinds of promises that had to be in writing, nothing in the wording of the statute suggests that the standards for determining whether there was a sufficient signature had been made more stringent. For example, the ordinary statute of frauds requires that agreements be in writing and signed with an authorized signature by the party to be charged with the agreement, contract or promise, whereas the statute of frauds for financial institutions requires that agreements be in writing and signed with an authorized signature by the financial institution. We see no reason to treat these two signature requirements differently. [*Pittman v Experian Info Solutions, Inc*, 901 F3d 619, 637 (CA 6, 2018) (cleaned up).][4]

Moreover, this Court has already extended the rule in *Clark* to a lease that must be in writing and signed under MCL 566.108. See *Jim-Bob*, 178 Mich App at 87. We conclude that the common law of signatures stated in *Clark* and *Jim-Bob* applies to the signature requirements for conveyances of an interest in land. Because the trial court had no reason for rejecting the signatures on the Release of Right of Way on the evidence before it, the trial court did not err by rejecting Adams Outdoor's argument that Glorycrest's cause of action was barred by the statute of frauds.

## V. STATUTE OF LIMITATIONS AND LACHES

Adams Outdoor also argues that Glorycrest's claim is barred by the applicable statutes of limitations or the doctrine of laches. We disagree.

An action to enforce a restrictive covenant sounds in contract. See *Stuart v Chawney*, 454 Mich 200, 210; 560 NW2d 336 (1997). Courts will generally enforce a restrictive covenant by injunction except when the breach sought to be enjoined was a mere technical violation without substantial injury, when the conditions have changed such that the restrictions are no longer enforceable, and when enforcement is barred by the applicable period of limitations or the equitable doctrine of laches. See *Cooper v Kovan*, 349 Mich 520, 530; 84 NW2d 859 (1957). A claim founded on a covenant in a deed or mortgage must be brought within 10 years of the breach. See MCL 600.5807(5). All other claims founded on a contract must be brought within six years of the breach. See MCL 600.5807(9).

Glorycrest did not sue Adams Outdoor for breaching the restrictive covenant; it sought a declaration from the court on how the existence of the restrictive covenant affected Glorycrest's

---

[4] Although federal court of appeals decisions are not binding on this Court, we find the analysis and conclusion of *Pittman* persuasive. See *Abela v Gen Motors Corp*, 469 Mich 603, 606; 677 NW2d 325 (2004).

rights and obligations under the lease with Adams Outdoor. Glorycrest further maintained that the lease was the result of a mutual mistake and asked for rescission of the lease. As our Supreme Court has explained, there is no specific period of limitations applicable to a claim for declaratory relief. See *Taxpayers Allied for Constitutional Taxation v Wayne Co*, 450 Mich 119, 128; 537 NW2d 596 (1995).[5] The applicable period of limitations depends on the substantive relief at issue in the claim for declaratory relief: "Claims for declaratory relief necessarily derive from claims for substantive relief because declaratory relief lies only in cases of 'actual controversy,' and not merely for abstract declarations of rights divorced from a factual context." *Id*.

In its complaint, Glorycrest alleged that the lease was no longer valid because Adams Outdoor could not rent out the billboard without violating the restrictive covenant. Glorycrest requested the trial court to cancel or rescind the lease based on that restriction. A claim for rescission may be a contract action governed by the six-year period of limitations. See *Wall v Zynda*, 283 Mich 260, 263-266; 278 NW 66 (1938). Glorycrest also requested the trial court to declare the parties' rights and obligations under the lease, which is a contract and thus any breach of it would be governed by the six-year limitations period under MCL 600.5807(9). Accordingly, the general six-year limitations period for contractual actions applies to the declaratory relief at issue. See *Taxpayers Allied*, 450 Mich at 128-129.

Glorycrest's claim accrued when all the elements of the cause of action had occurred and could be alleged in a proper complaint.[6] See *Sunrise Resort Ass'n, Inc v Cheboygan Co Rd Comm*, 511 Mich 325, 336; 999 NW2d 423 (2023). But the accrual of Glorycrest's claim cannot readily be discerned because neither party breached the lease. A claim for declaratory relief may be brought before harm occurs, *League of Women Voters*, 506 Mich at 586, but it cannot be brought until there is an actual controversy, see MCL 2.605(A)(1). A claim for declaratory relief accrues when there is a "present legal controversy, not one that is merely hypothetical or anticipated in the future." *League of Women Voters*, 506 Mich at 586 (cleaned up).

In its response to Glorycrest's motion for summary disposition, Adams Outdoor presented copies of the letters sent between Glorycrest and Adams Outdoor in which Glorycrest sought to terminate the lease after the expiration of the initial 10-year term. Adams Outdoor rejected that

---

[5] Glorycrest's effort to distinguish *Taxpayers Allied* on the ground that it did not bring a contract claim is not persuasive. In *Taxpayers Allied*, 450 Mich at 129, our Supreme Court held that parties cannot use a claim for declaratory relief to avoid the statute of limitations applicable to the substantive relief. Accordingly, courts must look to the substantive relief requested in the action for declaratory relief to determine which period of limitations might apply to the relief requested. See *id*. at 128-129. As will be explained, the substantive relief in this case involved the enforceability of the terms of the lease, which is contractual in nature and implicates contractual relief such as rescission and cancellation. The key issue is determining when the claim accrued.

[6] On appeal, Adams Outdoor asserts that Glorycrest's claim must have accrued years earlier because any breach of the restrictive covenant occurred years earlier. Adams Outdoor's premise is flawed. Glorycrest was not suing to compel compliance with the restrictive covenant—it sought guidance after a controversy arose about its rights and obligations under the lease in light of the restrictive covenant's enforceability by the state.

attempt and asserted that the lease renewed by its own terms and would last for another 10 years. Glorycrest had an actual controversy concerning whether it—as the lessor—could be liable for a breach of the restrictive covenant by allowing Adams Outdoor to maintain a billboard in violation of the restrictive covenant when the lease extended by its own terms. Consequently, Glorycrest's claim accrued after the lease renewed on June 12, 2022. Because Glorycrest sued for declaratory relief within six years of that date, its claim was timely. See MCL 600.5807(9).

Similarly, although a court sitting in equity may bar a claim as untimely under the doctrine of laches, the mere passage of time alone does not establish laches. See *Knight v Northpointe Bank*, 300 Mich App 109, 114-115; 832 NW2d 439 (2013). Rather, the evidence must show that the plaintiff's failure to act earlier prejudiced the defendant. *Id*. at 115. Because laches is an affirmative defense, the party asserting laches has the burden to present evidence in support of its application. See *Palenkas v Beaumont Hosp*, 432 Mich 527, 548; 443 NW2d 354 (1989) (opinion by ARCHER, J.) ("The party asserting an affirmative defense had the burden of introducing evidence to support the affirmative defense."); see also *id*. at 530 (concurring in Sections I and II of Justice ARCHER'S opinion); *Lewis v Poel*, 376 Mich 167, 169; 136 NW2d 7 (1965) (stating that laches is an affirmative defense).

In this case, the evidence showed that Glorycrest promptly asked for guidance once it became clear that Adams Outdoor intended to assert its rights under the lease after the lease renewed in possible violation of the restrictive covenant. Moreover, Adams Outdoor did not present any evidence that it was prejudiced by the delay in seeking guidance from the time of the renewal. On this record, the trial court cannot be faulted for failing to bar the action for declaratory relief on the grounds of laches.

## VI. GLORYCREST'S MOTION FOR SUMMARY DISPOSITION

Adams Outdoor further argues that the trial court erred by granting Glorycrest's motion for summary disposition under MCR 2.116(C)(10). We disagree.

Adams Outdoor argues that summary disposition was inappropriate because it never had the opportunity to conduct discovery. When a motion for summary disposition is filed before the close of discovery, the operative question is whether summary disposition is premature because further discovery stands a fair chance of uncovering factual support for the nonmovant's position. *Marilyn Froling Revocable Living Trust v Bloomfield Hills Country Club*, 283 Mich App 264, 292; 769 NW2d 234 (2009). Summary disposition is generally premature if it is granted before discovery is complete. *Id*. However, "the mere fact that the discovery period remains open does not automatically mean that the trial court's decision to grant summary disposition was untimely or otherwise inappropriate." *Id*. Instead, the nonmovant must identify the disputed issues and support that further discovery stands a fair chance of uncovering additional factual support through independent evidence. *Id*. "The party opposing summary disposition must offer the required MCR 2.116(H) affidavits, with the probable testimony to support its contentions." *Id*. at 292-293. See also *Mich Nat'l Bank v Metro Institutional Food Serv, Inc*, 198 Mich App 236, 241; 497 NW2d 225 (1993) ("[A] party opposing a motion for summary disposition because discovery is not complete must provide some independent evidence that a factual dispute exists."). Mere speculation that additional discovery may uncover supporting evidence is not enough. *Caron v Cranbrook Ed Community*, 298 Mich App 629, 646; 828 NW2d 99 (2012).

-11-

There was nothing precluding Adams Outdoor from conducting discovery. The trial court entered an order in December 2022 that provided a discovery deadline of February 2, 2023. Adams Outdoor did not move to extend discovery before passage of that deadline. Because discovery had closed by the time Glorycrest moved for summary disposition, the grant of summary disposition was not premature. See *Marilyn Froling Revocable Living Trust*, 283 Mich App at 292-293.

Adams Outdoor also argues that the trial court erred by granting Glorycrest's motion for summary disposition because there are factual questions regarding who typed the names on the Release of Right of Way, when the names were typed, and why the Release of Right of Way was prepared in that manner. We disagree. The Release of Right of Way was executed nearly 97 years ago. Clearly, none of the grantors, witnesses to the signatures, or other persons with personal knowledge of the execution of the agreement are available to testify. As discussed above, Adams Outdoor presented no evidence to contradict the evidence that the grantors authenticated their typewritten names and thus the trial court had no reason to reject the signatures on the Release of Right of Way. Accordingly, we conclude that the trial court did not err by granting summary disposition in favor of Glorycrest under MCR 2.116(C)(10).

## VII. ATTORNEY FEES

Finally, Adams Outdoor argues that the trial court erred by refusing to order Glorycrest to pay Adams Outdoor's reasonable attorney fees. We disagree.

Adams Outdoor relies on the fee-shifting provision of the lease, which provides: "In the event of litigation between Lessor and Lessee predicated upon this Lease Agreement, the prevailing party shall be entitled to recover its reasonable attorneys' fees and costs . . . ." Courts will enforce fee-shifting provisions in contractual agreements. See *Pransky v Falcon Group, Inc*, 311 Mich App 164, 194; 874 NW2d 367 (2015). Because Adams Outdoor did not prevail, it is not entitled to its attorney fees under the fee-shifting provision. See *id*. at 195.

## VIII. CONCLUSION

We affirm the trial court's order denying Adams Outdoor's motion for summary disposition under MCR 2.116(C)(7) and (8), and its order granting summary disposition in favor of Glorycrest under MCR 2.116(C)(10) and denying Adams Outdoor's request for summary disposition under MCR 2.116(I)(2).

/s/ Sima G. Patel
/s/ Christopher P. Yates
/s/ Douglas B. Shapiro